**Michael HUTH, et al.**

v.

**B.P. OIL, INC.**

**Civ. No. Y–82–2927.**

United States District Court,
D. Maryland.

Jan. 7, 1983.

**192**

I. Elliott Goldberg, Baltimore, Md., for plaintiffs.

John Henry Lewin, Jr., and Paul D. Shelton, Baltimore, Md., for defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

■ Defendant has filed a "Motion to Dismiss, Or, In the Alternative, For Summary Judgment" in the above entitled action. As resolution of the matter has required the Court to look beyond the allegations on the face of the pleadings, the Court treats defendant's motion as being one exclusively for summary judgment. Fed.R. Civ.P. 12(b). For the reasons outlined below, the Court agrees with defendant that the relevant statute of limitations has run. Consequently, the Court grants defendant summary judgment in its favor.

■ Plaintiffs present this case as a diversity action between Maryland plaintiffs and an Ohio corporate defendant. 28 U.S.C. § 1332. Plaintiff, Michael Huth, a former retail gasoline dealer, asserts that defendant terminated his dealership in violation of an express contractual term requiring advance notice. Plaintiffs couple this Maryland common law breach of contract claim with two common law fraud counts. The first fraud count asserts that defendant deliberately induced Mr. Huth to write a post-dated check so that defendant could present the check before the designated date for use of consequent dishonoring as a pretext for terminating the agreement. Somewhat more puzzlingly, plaintiffs claim in their second fraud count that defendant falsely represented *after* the termination that defendant would not directly assume operation of the station.[1]

■ Ordinarily, the general Maryland three year statute of limitations would govern this action.[2] Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1980 Replacement Volume). As the Maryland Court of Appeals has recently ruled that a cause of action subject to § 5–101 accrues on the date a plaintiff has actual knowledge of the action, *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981), plaintiffs have complied with § 5–101 by filing within three years of the October 18, 1979 franchise termination.

---

1. The Court notes that plaintiffs' second fraud count lacks an express or implied allegation of detrimental reliance, a crucial element in any deceit action. *See, e.g., James v. Weisheit,* 279 Md. 41, 44, 367 A.2d 482 (1977).

2. The Supreme Court has held that the general doctrine of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), fully applies to the statute of limitations area. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Consequently, this Court must turn to the choice of law rules of its forum state, Maryland. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). These rules indicate that Maryland substantive law provides the applicable statute of limitations. *Doughty v. Prettyman,* 219 Md. 83, 88, 148 A.2d 438 (1959); *Taggart v. Wachter,* 179 Md. 608, 624, 21 A.2d 141 (1941); *cf.* Restatement (Second) of Conflict of Laws §§ 142–43 (1969) (action always barred if barred by statute of limitations of forum state).

Defendant does not deny the ordinary applicability of § 5–101 to fraud and breach of contract claims. Instead, defendant argues that the instant case arises exclusively under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.,* as a suit for the wrongful termination of a franchise for the sale of retail gasoline. If this be the case, then plaintiffs' suit clearly falls outside the one year statute of limitations for PMPA wrongful termination suits. 15 U.S.C. § 2805(a). Defendant argues that plaintiffs have structured their case in common law terms solely to avoid the time-bar of § 2805(a).

The Court agrees that plaintiffs make allegations which, if true, would violate the franchise termination rules embodied in 15 U.S.C. § 2802(b)(1) and give rise to a civil action against the franchisor under 15 U.S.C. § 2805(a). While a plaintiff may ordinarily assert various legal theories subject to different limitations statutes for the same set of facts,[3] defendant argues that the PMPA preempts the common law claims and their generous time limits. After careful consideration of the relevant authorities, the Court concludes that preemption does exist and that § 2805(a) bars plaintiff's exclusive remedy under the PMPA.

Preemption frequently entails an extensive and relatively esoteric analysis of the competing values underlying our federal system. *See generally,* L. Tribe, *American Constitutional Law* 376–391 (1978). However, no need for such a searching doctrinal inquiry exists when Congress has spoken directly to the preemption issue. *Cf. Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978) (existence of express Congressional declaration a "legitimate inquiry"). In the present case, Congress has indeed spoken to the preemption issue:

To the extent that any provision of this subchapter [U.S.C. § 2801 *et seq.*], applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (*including any remedy* or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless *such provision* of such law or regulation *is the same* as the applicable provision of this subchapter.

15 U.S.C. § 2806(a) (emphasis supplied). § 2806 expressly covers remedies as well as rights; the Maryland limitations statute provides franchisees with a remedy for wrongful termination which is not "the same as" the civil action which 15 U.S.C. § 2805(a) both creates and circumscribes. Both the legislative history and numerous District Court decisions confirm that Congress specifically intended to preempt conflicting state laws dealing with the termination of franchise relationship. S.Rep. No. 731, 95th Cong., 2nd Sess. 42, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 901; *Lyons v. Mobil Oil Corp.,* 526 F.Supp. 961, 962 (D.Conn.1981); *Gaspar v. Chevron Oil Co.,* 490 F.Supp. 971, 973 (D.N.J.1980) (stating in *dicta* that "[t]he Act is the exclusive remedy available to the franchisee"); *Munno v. Amoco Oil Co.,* 488 F.Supp. 1114 (D.Conn.1980); *Exxon Corp. v. Georgia Association of Petroleum Retailers,* 484 F.Supp. 1008 (N.D.Ga.1979); *Lanham v. Amoco Oil Co.,* 481 F.Supp. 405 (D.Md.1979) (Blair, J.); *Ted's Tire Service, Inc. v. Chevron U.S.A., Inc.,* 470 F.Supp. 163 (D.Conn. 1979).[4]

---

**3.** For example, a Maryland products liability case would ordinarily contain a strict liability count subject to the three year period of § 5–101 and a breach of warranty count controlled by the four year limit of Md.Com.Law Code Ann. § 2–725(1) (1975).

**4.** The Court recognizes that it has previously adjudicated a wrongful termination case involving both PMPA and state law claims without addressing the preemption issue. *Malone v. Crown Central Petroleum Co.,* 474 F.Supp. 306 (D.Md.1979). *See also Rittmiller v. Blex*

■ Plaintiffs might argue that § 2806 only preempts state statutes expressly regulating the petroleum franchisor-franchisee relationship and does not address generalized statutes and common law doctrines being specifically applied to such a relationship. However, the relevant legislative history points to an opposite conclusion. The segment of the Senate Committee Report specifically discussing the contours of § 2806 explained in some detail why § 2806 would not always preempt "state-granted rights of assignability." S.Rep. No. 731, 95th Cong., 2nd Sess. 42–43, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 901. The law of assignment is a traditional area of the common law of contracts; the fact that the Committee felt constrained to explain the ramifications of § 2806 for one set of common law rights implies that Congress contemplated coverage of generalized state laws when appropriate. The Senate Report also stresses the need "to establish uniform guidelines regarding the franchise relationship." S.Rep. No. 731, 95th Cong., 2nd Sess. 19 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 877. Conflicting application of a common law rule or a generalized statute of limitations disrupts the "uniform guidelines" of the PMPA just as much as a specific state regulatory statute would.

Not surprisingly, district courts have included common law claims within the sweep of § 2806. *Meyer v. Amerada Hess Corp.,* 541 F.Supp. 321 (D.N.J.1982); *Clark v. Mobil Oil Corp.,* 496 F.Supp. 132 (E.D.Mo. 1980); *Lanham,* 481 F.Supp. at 406 (PMPA supercedes old Maryland case defining the nature of a franchise as property). Research has revealed two cases where a court has considered an arguably preempted common law claim on the merits. *Clark,* 496 F.Supp. at 135 (no reasoned explanation for variance from prior holding on preemption of common law claim); *Wojciechowski v. Amoco,* 483 F.Supp. 109 (E.D.Wis.1980).

However, neither case addressed the relevant and dispositive legislative history reviewed above.

■■ Plaintiffs in fact appear implicitly to concede the exclusive applicability of the PMPA. Their reply memorandum ignores the preemption issue and argues instead that defendant's tentative settlement feelers equitably estop defendant from raising the one year § 2805(a) limitations defense. The Fourth Circuit has adequately summarized the doctrine of equitable estoppel:

"Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay [sic]."

*United States v. Fidelity and Casualty Co. of New York,* 402 F.2d 893, 897 (4th Cir. 1968). Plaintiffs rest their equitable estoppel argument upon certain unverified representations of counsel:

"The plaintiffs entered into negotiations with the defendant in November, 1979, with a view toward severing the differences between them. In May of 1980, plaintiffs again attempted to correspond with the defendant and did, in fact, have a telephone conversation with the defendant regarding their claim. Defendant did not respond until late June of 1980. In mid-July of 1980, the defendant suggested face-to-face negotiations but it was not until mid-August, 1980, that said negotiations were arranged with the defendant. After the August meeting, the defendant was to forward to the plaintiffs a print-out of their account; however, despite a request for the same to be

---

*Oil Inc.,* 624 F.2d 857 (8th Cir.1980) (full consideration of Minnesota regulatory rights without mention of PMPA); *Day Enterprises Inc. v. Crown Central Petroleum,* 529 F.Supp. 1291 (D.Md.1982) (Thomsen, S.J.) (Maryland statute fully considered with no mention of preemp-

tion). However, the parties in *Malone* did not raise the preemption issue, and Congress had only recently enacted the PMPA. Subsequent case law, as well as the relevant legislative history, mandates the present decision.

sent, the defendant never did send a print-out of the plaintiffs' account."

Even if these allegations were properly presented, the doctrine of equitable estoppel does not apply. Plaintiffs allege only two specific affirmative actions by defendant: (1) defendant suggested a meeting in mid-July, 1980, and (2) defendant attended a meeting in August, 1980. Mere negotiations, as opposed to an actual settlement offer, do not constitute sufficient conduct by the defendant. *Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1071 (7th Cir. 1978). Moreover, plaintiffs' scenario when taken as a whole seems far more likely to engender suspicion than to induce reliance.

For the foregoing reasons, it is this 7th day of January, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's motion for summary judgment BE, and the same IS, hereby GRANTED:

2. That judgment BE, and the same IS, hereby ENTERED IN FAVOR OF THE DEFENDANT.