**CONTINENTAL ENTERPRISES, INC., Appellant,**

v.

**The AMERICAN OIL COMPANY and Amoco Oil Company, Appellees.**

**No. 86–1252.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1986.
Decided Dec. 17, 1986.

Matthew J. Stretz, Kansas City, Mo., for appellant.

Douglas W. Johnson, Chicago, Ill., for appellees.

---

\* Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota.

1. The Honorable Elmo B. Hunter, United States Senior District Judge for the Western District of Missouri.

2. American Oil Co. was the former corporate name of Amoco Oil Co.

3. Paragraph five of the agreement reads as follows:

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and NICHOL,\* Senior District Judge.

McMILLIAN, Circuit Judge.

Continental Enterprises, Inc. (Continental) appeals from a final judgment entered in the District Court[1] for the Western District of Missouri granting summary judgment in favor of the American Oil Co.[2] and the Amoco Oil Co. on Continental's claims of breach of contract, tortious interference with contract and misrepresentation. 628 F.Supp. 126. For reversal Continental argues that the district court erred in (1) holding that Continental's common law claims were preempted by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. (1982) (PMPA) and barred by the PMPA one year statute of limitations and (2) granting summary judgment on Continental's misrepresentation claim. For the reasons discussed below, we affirm the judgment of the district court.

Amoco Oil Co. (Amoco), a Maryland corporation with its principal place of business in Illinois, entered into a lease and lease-back agreement with Continental on June 8, 1971. According to this agreement, Continental leased the service station that it owned in Independence, Missouri, to Amoco; Amoco in turned leased back the facility to Continental for use as an Amoco service station. The contract contained an automatic renewal provision which is at issue in this case. This provision would have permitted Continental to operate under the agreement through June 1982.[3]

In June 1980, two years before the end of the period covered by the automatic renewal provision, Continental and Amoco

This lease shall automatically renew itself for a total of not more than ten successive periods of one (1) each, on the same rental terms and conditions which were in effect during their original term, subject to cancellation by Lessee [Amoco] as of the end of the original term or as of the end of any renewal period by at least thirty (30) days advance written notice to Lessor.

entered into a new lease and lease-back agreement for a two year term ending June 6, 1982. Continental contends that Amoco's refusal to renew the 1971 lease and lease-back agreement was a violation of the 1971 agreement. Continental further contends that it was forced to sign the 1980 agreement because Amoco refused to renew the franchise under any other conditions.

Continental continued its business through November 1982. During the period from June 1980 to November 1982, Amoco sold petroleum products to Continental according to the terms of the 1980 agreement. Amoco alleges that Continental owes Amoco $35,000, arising out of the franchise agreement, which Amoco planned to recover through a lawsuit.

On May 23, 1985, Continental filed suit in the Missouri Circuit Court of Jackson County. The complaint alleged tortious interference with contract, breach of contract and misrepresentation.[4] Amoco removed the case to the federal district court and subsequently filed a motion to dismiss and for summary judgment. Continental responded but did not file an affidavit in support of its response. The district court granted summary judgment and Continental appealed.

We consider first Continental's argument that the one year statute of limitations of the PMPA does not apply to bar Continental's state law claims. There is no dispute that the Continental complaint was filed five years after the nonrenewal of the 1971 contract and two and one half years from the date Amoco ceased deliveries to Continental. The question is whether the PMPA preempts Continental's state law claims so that the PMPA one year statute of limitations applied.

Continental argues that the PMPA does not apply to its claims because Congress by its enactment of the PMPA did not intend to preempt state law claims but rather intended to create a federal remedy to supplement the existing common law remedies. Continental relies on *Clark v. Mobil Oil Corp.*, 496 F.Supp. 132 (E.D.Mo.1980), *aff'd without opinion*, 652 F.2d 2 (8th Cir.1981) (*Clark*), for the proposition that the PMPA governs only procedures for the termination or nonrenewal of franchises but does not preclude common law claims arising out of these franchises.

Amoco contends, on the other hand, that the PMPA is the exclusive remedy for claims based on wrongful termination or nonrenewal of gasoline franchises. Amoco argues that Continental's complaint, no matter how worded, is based on a wrongful nonrenewal of the contract in 1980 or a wrongful termination in 1982. We agree with Amoco that the PMPA preempts Continental's state law claims.

▪ The PMPA was passed in 1978 and provides minimum federal standards governing the termination or nonrenewal of franchise relationships between the distributors of petroleum products and the retailers who sell these products to the public. S.Rep. No. 731, 95th Cong., 2d Sess. 18–19, *reprinted* in 1978 U.S.Code Cong. & Ad.News 873, 877. The PMPA prohibits termination or nonrenewal without proper grounds and notice. *Id.* at 892. The primary objective of the PMPA is to protect franchisees from arbitrary and discriminatory terminations. *Esso Standard Oil Co. v. Department of Consumer Affairs*, 793 F.2d 431, 434 (1st Cir.1986) (*Esso*). If a franchisor fails to comply

---

**4.** Count I, Tortious Interference With Contract. That the cancellation, termination and failure to renew the lease dated June 8, 1971, constitutes a wrongful tortious interference with a contract between Amoco, as lessor and Continental as lessee, and as aforesaid.

Count II, Contract. That the cancellation, termination and failure to renew, as described above, constitutes a breach of contract between plaintiff and defendant.

Count III, Misrepresentation. That the defendant, ... at all times represented to plaintiff that it would be able to operate its service stations for a period of eleven years, ... that such representations were material to such purchase by plaintiff, and plaintiff relied upon such representation.

with the statutory requirements, the franchisee may bring a civil action against such franchisor within one year after the date of termination or nonrenewal of the franchise agreement or the date the franchisor fails to comply with the requirements of the PMPA.

Congress clearly intended to provide uniform minimum standards for the termination and nonrenewal of franchises and to bar state regulation of this area. Section 2806 of the PMPA provides:

> [N]o state or any political subdivision thereof may adopt, enforce or continue in effect any provision of any law or a regulation (including any remedy or penalty ...) with respect to termination ... of any such franchise or to the renewal ... of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a) (1982).

A number of courts have considered the scope of this preemption provision. The First Circuit in *Esso*, 793 F.2d at 431, held that the PMPA did not preempt an action based on a Puerto Rican statute which regulated rents that could be charged to oil company franchisees because Congress did not intend to preempt state regulation of all elements of the franchise agreement, but only those state laws and regulations that govern the termination or nonrenewal of franchises. The court noted that " '[b]y specifying with such precision when the states must stand aside in favor of federal regulation, Congress implicitly marked out the bounds of the power it intended to exercise. Beyond those limits, state regulation may claim full federal approbation.' " *Id.* at 434, *citing Exxon Corp. v. Georgia Ass'n of Petroleum Retailers*, 484 F.Supp. 1008, 1017 (N.D.Ga.1979), *aff'd sub. nom. Exxon Corp. v. Busbee*, 644 F.2d 1030 (5th Cir.1981). The court concluded that the Puerto Rican statute, which regulated a substantive element of the franchise agreement, was not preempted by the PMPA because the law did not restrict or enhance any rights which the PMPA gives to a franchisor or franchisee upon termination or nonrenewal of a franchise. 793 F.2d at 436.

A similar rationale appears to be the basis for the decision in *Clark*, 496 F.Supp. at 135. There the district court stated that under Missouri common law, a franchisee had the right to bring an action to recoup his or her investment even though the franchisor has the right to terminate the relationship at will. The common law action is simply one for damages to the extent that the franchisee has not been afforded an opportunity to recoup his or her investment. *Id.* The district court concluded that the franchisee had recouped his investment. *Id.* The Eighth Circuit affirmed this decision without opinion.

A number of district courts have held that the PMPA preempts a state law action when the action arises out of the franchise termination or is an incident of the termination. *E.g., Grogan v. Shell Oil Company*, No. 85–C–9254 (N.D.Ill. May 14, 1986) (*Grogan* ) [Available on WESTLAW, DCTU database] (Lexis, Genfed library, Dist. file). In *Grogan* the franchisee charged that the franchisor's decision not to renew the contract did not comply with normal business practices and was made in bad faith. The district court, although recognizing the persuasiveness of the franchisee's argument for a state law claim, nonetheless held that state law claims may not be viewed in isolation from the termination decision. Slip op. at 1–2. The court stated that courts must examine the totality of the circumstances to discern whether the alleged breach of contract occurred independently of the nonrenewal or merely as an incident of the transition in business ownership. *Id.* The district court further stated that the test was "whether the purported acts giving rise to the claim should be characterized as independent of or in relation to the termination." *Id.* at 2. If the acts giving rise to the state law claims were related to the termination, then the state law claims were preempted by the PMPA. *Id.*

The District Court for the Eastern District of Pennsylvania reached a similar result in *Serianni v. Gulf Oil Corp.*, (E.D. Pa.1986) (printed in Bus.Franchise Guide CCH 8656) (*Serianni*) [Available on WESTLAW, DCTU database]. In *Serianni* the franchisee alleged that Gulf refused to renew its contract because the franchisee had not met the minimum volume requirement of 20,000 gallons per month. The franchisee alleged both a federal claim under the PMPA and a state law claim under Pennsylvania common law and under the Pennsylvania Gasoline Act, which prohibited termination for failure to meet sales quotas. The district court held that the state law claim was preempted because "both the statutory provision cited by plaintiff [franchisee] and the conduct complained of relate directly to the issue of nonrenewal." *Id.* at 867.

In *Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191 (D.Md.1983) (*Huth*), the district court faced the same issue presented in the present case. In *Huth* the franchisee alleged that the franchisor terminated the dealership in violation of an express contract term concerning advance notice. The plaintiff also alleged two state law fraud counts. The issue was whether the two state law fraud counts were barred by the PMPA's one year statute of limitations. The district court concluded that Congress had spoken directly to the preemption issue and that the legislative history and numerous district court cases had held that Congress specifically intended to preempt conflicting state laws dealing with termination of the franchise relationship. *Id.* at 193–94. The court concluded that the PMPA applied to the state law claims and that the action was barred by the PMPA's one year statute of limitations. *Id.* at 192.

We hold that Continental's state law claims are similarly preempted by the PMPA. Continental's main contention is that Amoco wrongfully failed to renew the 1971 franchise agreement or wrongfully terminated the 1980 agreement. These allegations fall squarely within the area covered by the PMPA provision. Thus, the one year statute of limitations applies and Continental's action, which was filed more than one year after the franchise agreement was terminated or not renewed, must be dismissed as untimely filed.

Continental's second allegation of error is that the district court erred in granting summary judgment on the misrepresentation count. Continental argues that there were material factual issues in dispute, which made summary judgment inappropriate.

The district court actually dismissed the misrepresentation claim on two grounds. The first was that the PMPA preempted the claim and it was barred as untimely filed. The second ground for dismissal was the absence of any disputed facts. Because we agree with the district court that the misrepresentation claim is barred by the PMPA statute of limitations, we need not decide if the alternative ground for granting summary judgment was proper.

Accordingly, the judgment of the district court is affirmed.