Jose **ESQUIVEL, Jr.** d/b/a San Pedro Exxon, Plaintiff,

v.

**EXXON COMPANY, U.S.A.,** Defendant.

Civ. A. No. SA–87–CA–1591.

United States District Court,
W.D. Texas,
San Antonio Division.

Nov. 10, 1988.

Herbert W. Fortson, III, Withem & Fortson, Houston, Tex., for plaintiff.

William R. Hurt, Houston, Tex., for defendant.

## ORDER

PRADO, District Judge.

On this date came on to be considered Defendant Exxon Corporation's Motion for Summary Judgment, filed in the above-styled and numbered cause on July 5, 1988; Plaintiff's Opposition to Exxon's Motion for Summary Judgment, filed on September 23, 1988; Defendant Exxon Corporation's Reply to Plaintiff's Opposition to Exxon's Motion for Summary Judgment, filed on October 14, 1988; and Defendant Exxon Corporation's Request for Hearing on Defendant Exxon Corporation's Motion for Summary Judgment, filed on the same date.

### I. Introduction

On January 21, 1987, Defendant Exxon and Plaintiff Jose Esquivel, Jr. entered into a trial franchise agreement permitting Plaintiff to operate an Exxon service station. The trial franchise agreement was nonrenewed by Defendant at the conclusion of its term, January 1, 1988. Defendant nonrenewed by providing the notice required by § 104 of Title I of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–06 (PMPA). This notice took the form of a letter to Plaintiff dated September 21, 1987. On December 17, 1987, Plaintiff filed his complaint in this case claiming (1) Defendant did not properly nonrenew the trial franchise as required by the PMPA, (2) Defendant falsely represented to Plaintiff that his franchise would be renewed, (3) Defendant is precluded from nonrenewing the trial franchise because of its misrepresentations which constitute a modification and extension of the franchise, (4) Defendant is estopped from denying any renewal of the lease and has waived any right or reason upon which to base any nonrenewal of the franchise lease because of its misrepresentations, and (5) Defendant breached fiduciary duties it owed to Plaintiff.

Defendant has moved for summary judgment claiming (1) it validly nonrenewed Plaintiff's trial franchise under the PMPA, (2) the reasons for nonrenewal of the trial franchise were valid and legitimate, (3) Plaintiff's state common law claims are preempted by the PMPA, and (4) Defendant is entitled to summary judgment on Plaintiff's state common law claims. Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered in a movant's favor "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any summary judgment] affidavits, ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

### II. PMPA Claim

Plaintiff's first claim is that Defendant did not properly nonrenew his trial franchise as required by the PMPA. It is undisputed that Plaintiff entered into a trial franchise with Defendant. Original Complaint, Dec. 17, 1987, ¶ 9; Retail Service Station Lease (Trial Franchise), Jan. 21, 1987 (attached as Exhibit A to Original Complaint, Dec. 17, 1987). Under the PMPA, there are two types of franchises: the regular franchise described in § 2801(1), and the trial franchise described in § 2803(b)(1). The two types of franchises are distinguished by the fact that the provisions of § 2802, strictly limiting the right of a franchiser to nonrenew a franchise relationship, do not apply to a trial franchise. 15 U.S.C. § 2803(a)(1). The only requirement for terminating a trial franchise is that proper notice be given, pursuant to § 2804, at the conclusion at the initial term of the trial franchise. 15 U.S.C. § 2803(c)(1); *Freeman v. BP Oil, Inc.,* 855 F.2d 801, 802 (11th Cir.1988). The PMPA does not require that termination or nonrenewal of a trial franchise be conditioned on good cause reasons. *See* 15 U.S.C. § 2804(c)(3)(A) (notice must state intention to nonrenew or terminate trial franchise "together with the reasons therefor").

Section 2804 requires that notice be given not less than 90 days prior to termination; that it be in writing; that it be posted by certified mail or personally delivered to the franchisee; that it contain a statement of intention to terminate the franchise with the reasons therefor; that it give the date on which such termination or nonrenewal shall take effect; and that it provide a summary statement of the PMPA. 15 U.S.C. § 2804(a) and (c). Plaintiff does not contend that Defendant's notice of nonrenewal did not comply with § 2804's technical requirements. Original Complaint, Dec. 17, 1987, ¶ 6. It thus appears that, as a matter of law, Plaintiff has failed to even state a claim upon which he can recover. *See Freeman,* 855 F.2d at 802 ("If the franchisee was a 'trial franchisee' ..., [the franchiser] need only have satisfied the notice requirements of section 2804 in effectuating the nonrenewal."). Plaintiff claims, however, that the reasons given in Defendant's notice were "not legitimate." While Plaintiff does not explain what he means by "not legitimate," the Court infers that Plaintiff means not truthful or false.

The reasons given by Defendant for nonrenewing Plaintiff's trial franchise were as follows:

The reason that your franchise relationship will not be renewed is our good-faith business judgment that you have failed to demonstrate sufficient fiscal and business responsibility to warrant the continuance of our relationship. The judgment is based, in part, upon the following lists of events or facts. This listing is exemplary only and is not meant to be exhaustive. However, we consider each of the listed events or facts to be of sufficient basis for not continuing our franchise relationship with you.

(1) On several occasions, Exxon has received bonafide [sic] customer complaints

concerning your operation of the above referenced marketing premises;

(2) Exxon has not been paid in a timely fashion sums to which it is legally entitled;

(3) On at least one occasion, [your station] was observed by Exxon representatives to be closed during normal business hours;

(4) Your failure to exert good faith efforts to carry out the provisions of the franchise agreement between you and Exxon.

Letter to Jose Esquivel, Jr. from Foy Royder, District Manager, Exxon Company, U.S.A., Sept. 21, 1987, at 1–2 (attached as Exhibit B to Original Complaint, Dec. 17, 1987) (hereinafter Letter). In his response to Defendant's summary judgment motion, Plaintiff spends much time arguing that the reasons given for nonrenewal in Defendant's September 21, 1987 letter were false. The summary judgment evidence indicates, however, that Plaintiff admits at least one of the reasons for nonrenewal and it therefore appears that Defendant's nonrenewal was proper.

■ Once again, the Court notes that under § 2804(c)(3), any reason for nonrenewal will suffice to support the nonrenewal of a trial franchise. This section is "far less demanding than the grounds for nonrenewal of a regular franchise under § 2802(b)." *Freeman v. B.P. Oil, Inc.,* 651 F.Supp. 654, 655 (M.D.Fla.1986). If the Court were to require Defendant to give a "substantial reason" for nonrenewal, "the Court would be embossing the 'trial franchise' nonrenewal provisions with a good cause provision not intended by Congress." *Wojciechowski v. Amoco Oil Co.,* 483 F.Supp. 109, 113 (E.D.Wis.1980). Valid reasons for nonrenewal of a regular franchise include the existence of customer complaints,[1] failure to timely pay amounts due under a franchise agreement,[2] and failure to maintain required hours of operation.[3] These reasons should be applicable

---

1. *Routis v. Texaco, Inc.,* Bus. Franchise Guide (CCH) ¶ 8226, at 14,700, 14,701 (S.D.Tex. July 13, 1984).

2. 15 U.S.C. § 2802(c)(8); *Clinkscales v. Chevron U.S.A., Inc.,* 831 F.2d 1565, 1570–71 (11th Cir. 1987).

3. *Doebereiner v. Sohio Oil Co.,* 683 F.Supp. 791, 792–93 (S.D.Fla.1988); *Mobil Oil Corp. v. Kar-*

to termination or nonrenewal of trial franchises also since even lesser reasons have been held valid for purposes of terminating a trial franchise. *E.g., Freeman,* 651 F.Supp. at 655 (nonrenewal because of trial franchisee's "negative attitude" held valid).

■ Defendant has given several reasons in support of its decision to nonrenew Plaintiff's trial franchise. Plaintiff claims that none of these reasons is legitimate. If, however, any one of Defendant's reasons is legitimate, or true, the fact that the other reasons are somehow defective will not affect Defendant's nonrenewal. *Stuart v. Exxon Co., U.S.A.,* 624 F.Supp. 648, 653 (N.D.Tex.1985).

At this point, a "clarification" of Defendant's reasons for nonrenewing Plaintiff's trial franchise, as the Court sees them, might be helpful. Defendant's September 21, 1987 letter indicates that there is really only one reason for nonrenewing the franchise: "our good-faith business judgment that you have failed to demonstrate sufficient fiscal and business responsibility to warrant the continuance of our relationship." Letter, at 1. The letter then lists several "events or facts" supporting Defendant's decision. The letter states, however, that "[t]his listing is exemplary only and is not meant to be exhaustive." *Id.* Plaintiff views each of the events or facts as a reason for nonrenewal and disregards Defendant's statement concerning the exercise of its "good-faith business judgment." The Court shall therefore first consider the reasons as Plaintiff views them.

One of the events listed by Defendant as supporting the decision to nonrenew Plaintiff's trial franchise was that, on at least one occasion, his station was observed closed during hours it was supposed to be open. Defendant's letter does not give the date or time of the observation. The trial franchise agreement entered into by the parties provided that Plaintiff was to keep his station open not less than 18 hours a day, from 6:00 a.m. to 12:00 a.m., everyday. Retail Service Station Lease (Trial Franchise), Jan. 21, 1987, ¶ 6(a) (attached as Exhibit A to Original Complaint, Dec. 17, 1987). Plaintiff contends that the station was open on the date in question, apparently July 11, 1987, and has supplied the affidavit of a former employee indicating that the station was open on that date from 7:00 a.m. to 11:00 p.m. Affidavit of Armando Gutierrez, Sept. 23, 1988 (attached as Exhibit B to Plaintiff's Opposition to Exxon's Motion for Summary Judgment, Sept. 23, 1988). Plaintiff's own response to defendant's summary judgment motion states that the station was "opened at 7:29 a.m. and closed at 11:02 p.m." on July 11, 1987. Plaintiff's Opposition to Exxon's Motion for Summary Judgment, Sept. 23, 1988, at 11. During his deposition, Plaintiff testified concerning his hours of operation as follows:

Q: [Plaintiff's counsel]: How has [the station] been operated on Sundays?

A: [by Plaintiff]: I changed the hours.

Q: To what?

A: I lengthened them.

Q: From what to what?

A: 8:00 to 10:00.

Q: 8:00 in the morning until 10:00 in the evening?

A: Yes, sir.

Q: And Sundays?

A: Yes, sir.

Q: Have those been your Sunday hours of operation since you took over opening the station?

A: No, sir.

Q: How long has that hours of operation and manning situation been in effect?

A: Can you rephrase that and reask the question?

Q: Did you ever operate the station with one employee working ten hours a day on Sundays?

A: Yes, sir.

Q: For what period of time?

A: About eight months.

*bowski,* 667 F.Supp. 927, 936 (D.Conn.1987); *Gruber v. Mobil Oil Corp.,* 570 F.Supp. 1088, 1095 (E.D.Mich.1983); *Crown Central Petroleum Corp. v. Waldman,* 515 F.Supp. 477, 486–87 (M.D.Pa.1981).

Q: Beginning approximately when and ending approximately when?

A: Beginning in January and I stopped in September.

Q: Of 1987?

A: Yes, sir.

Q: And that one person would work ten hours during the day?

A: 9:00 a.m. to 8:00 p.m.

Q: He opened at 9:00 and closed at 8:00 p.m.?

A: Yes, sir.

Q: And then you said you lengthened the hours from 8:00 in the morning until 10:00 in the evening on Sundays?

A: Yes, sir.

Q: And that occurred in?

A: September.

Q: September?

A: Yes, sir.

Q: Are those the hours you've operated since September of 1987?

A: Yes, sir.

Q: On Sundays, I mean.

A: Yes, sir.

Q: All right. What about Mondays through Saturdays? What hours have you operated from the time you went in the station?

A: 6:00 to 12:00—I take it back. 6:00 to 11:00.

Q: 6:00 a.m. until 11:00 p.m.?

A: Yes, sir.

Q: And how long did you operate for those hours during the weekdays and Saturdays?

A: That same time that I changed Sunday hours.

Q: So, from January to September, or thereabouts, or 1987, you were open from 6:00 in the morning until 11:00 in the evening; is that right?

A: Yes, sir.

Q: And what happened in September on the weekday and Saturday hours?

A: Okay. I changed them from 6:00 to 12:00.

Q: 6:00 in the morning to 12:00 midnight?

A: Yes, sir.

Oral Deposition of Jose Esquivel, Jr., Vol. I, Feb. 29 and Mar. 1, 1988, at 229–31.

Plaintiff apparently wishes the Court to "strictly construe" Defendant's claim that a legitimate reason for the nonrenewal of Plaintiff's trial franchise was that Plaintiff's station was, on at least one occasion, observed to be closed during normal business hours. Plaintiff argues that he was open on the afternoon of July 11, 1987, when an Exxon employee reported Plaintiff's station as being closed. Yet, Plaintiff's own summary judgment evidence indicates that he was not open from 6:00 a.m. to 12:00 a.m. on that date as required by the trial franchise agreement.[4] Plaintiff's own deposition is in fact replete with testimony indicating it was Plaintiff's practice to *not* be open during the required hours. *Id.* at 49, 229–31, 233–35; Oral Deposition of Jose Esquivel, Jr., Vol. II, Mar. 16–17, 1988, at 596–98. The Court finds that, by informing Plaintiff that one of the reasons for nonrenewing his franchise was that, on at least one occasion, Plaintiff's station had been observed to be closed during normal business hours, Defendant was indicating that failure to maintain required hours of operation was a reason for Defendant's nonrenewal. Plaintiff's contention that he was open on the specific occasion in question merely raises a semantical argument as to Defendant's meaning which the Court rejects. As stated earlier, failure to maintain required hours of operation is a valid reason for nonrenewal of a *regular* franchise. *See supra* note 3. The reason given for the nonrenewal of Plaintiff's trial franchise being legitimate, *i.e.*, true, the nonrenewal by Defendant was valid.[5]

---

**4.** Plaintiff testified that he was aware that the trial franchise agreement required his station to be open from 6:00 a.m. to 12:00 a.m. everyday. Oral Deposition of Jose Esquivel, Jr., Vols. I and II, Feb. 29, Mar. 1, 16–17, 1988, at 49, 364–65.

**5.** Plaintiff's contention that his failure to maintain required business hours is a "stale and long forgotten" event which should be disregarded pursuant to § 2802(b)(2)(A) is without merit

Furthermore, even if Plaintiff is correct in asserting that he was open on the afternoon of July 11, 1987 and Defendant's stated reason that he was closed is thus illegitimate, the Court notes that an additional reason given for nonrenewal was Plaintiff's "failure to exert good faith efforts to carry out the provisions of the franchise agreements...." Letter, at 2. As previously stated, Plaintiff testified in his deposition that it was his practice to *not* keep his station open during the hours required by the trial franchise agreement. Plaintiff does not claim he exerted good faith efforts to keep his station open during the required hours and was just unsuccessful. Rather, Plaintiff makes clear that he exerted no efforts to keep his station open during the required hours and instead chose to set his own hours of operation, in direct contravention of the trial franchise agreement. Oral Deposition of Jose Esquivel, Jr., Vols. I and II, Feb. 29, Mar. 1, 16–17, 1988, at 49, 229–31, 233–35, 596–98. The Court finds that, as Defendant's notice letter states, Plaintiff did not exert good faith efforts to carry out the provisions of the trial franchise agreements. The nonrenewal of Plaintiff's trial franchise was thus valid for this additional reason.

Finally, as the Court explained in its clarification, the ultimate reason given for nonrenewal was Defendant's "good-faith business judgment" that Defendant had "failed to demonstrate sufficient fiscal and business responsibility to warrant continuance of [the parties'] relationship." Letter, at 1. Because § 2802 does not apply to the nonrenewal of a trial franchise, 15 U.S.C. § 2803(a)(1), there is no express requirement that the determination to nonrenew be made "in good faith and in the normal course of business." *Compare* 15 U.S.C. § 2804(c)(3)(A) *with* 15 U.S.C. § 2802(b)(2)(E), (b)(3)(A)(i), *and* (b)(3)(D). If the Court were to impose such a requirement, it would be in direct contravention of Congress' intent that there be no such requirement. *Wojciechowski,* 483 F.Supp. at 113. The test for determining whether a franchiser has acted in good faith and in

since § 2802 does not apply to the nonrenewal

the normal course of business may be useful, however, in determining whether Defendant's decision to nonrenew was a proper exercise of its good faith business judgment. The "good faith" prong of this test "is intended 'to preclude sham determinations from being used as an artifice for termination or nonrenewal.'" *Roberts v. Amoco Oil Co.,* 740 F.2d 602, 606 (8th Cir.1984) (quoting S.Rep. No. 95–731, 95th Cong., 2d Sess. 37 *reprinted in* 1978 U.S. Code Cong. & Ad.News 873, 895–96). Generally, only a "good heart" or the franchiser's subjective good faith is required on the part of the franchiser to satisfy this prong. *Id.* The Court has previously determined that Plaintiff failed to keep his station open during the hours required by the trial franchise agreement. Defendant's claim that nonrenewal was based on the failure to maintain required business hours was thus not a sham and was in good faith. The "normal course of business" prong is Congress' method for avoiding second guessing the business judgment of franchisers. *Id.* Many courts have already determined that failure to maintain required business hours is a valid reason for termination or nonrenewal. *See supra* note 3. This Court will not second guess Defendant's business judgment to terminate Plaintiff's trial franchise on that basis. Defendant's exercise of its "good-faith business judgment" meets the "good faith and in the normal course of business" test sometimes required in the termination or nonrenewal of regular franchises. Defendant's decision to nonrenew on the basis of its good faith business judgment that Plaintiff did not have sufficient business responsibility was a legitimate reason for nonrenewal. Defendant's nonrenewal was therefore valid for this reason also.

Because the Court concludes that Defendant's nonrenewal due to Plaintiff's failure to maintain required business hours was valid and summary judgment should be entered in Defendant's favor on Plaintiff's PMPA claim, the Court need not consider whether the existence of bona fide customer complaints and Plaintiff's failure

of trial franchises. 15 U.S.C. § 2803(a)(1).

to timely pay amounts due Defendant were also legitimate reasons for nonrenewal.[6] *Stuart*, 624 F.Supp. at 653.

### III. Preemption of State Common Law Claims

The Court must next determine whether Plaintiff's state common law claims are preempted by the PMPA and should therefore be dismissed. The PMPA contains an express preemption clause which provides as follows:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a). In explaining the purpose of the PMPA and its preemption provision, it has been stated that:

> [the PMPA] was intended to provide a single, uniform set of rules governing termination and non-renewal of petroleum franchises to reduce friction between franchisers and franchisees in marketing of motor fuels.... State law relating to franchise termination [and nonrenewal] is specifically preempted.... "In enacting the PMPA, Congress attempted to provide national uniformity of petroleum franchise termination law. The purpose of uniformity would be frustrated if the PMPA was not given its preemptory intent."

*Humboldt Oil Co., Inc. v. Exxon Co., U.S.A.*, 823 F.2d 373, 374–75 (9th Cir.1987), *cert. denied sub nom. Mastello v. Exxon Co., U.S.A.*, —— U.S. ——, 108 S.Ct. 1575, 99 L.Ed.2d 890 (1988) (quoting *Atlantic Richfield Co. v. Herbert*, 806 F.2d 889, 892 (9th Cir.1986)). The PMPA thus preempts all inconsistent state law.

Defendant claims that, pursuant to § 2806(a), Plaintiff's state common law claims are preempted by the PMPA. Although Plaintiff has "alleged" four state common law claims in his complaint, the Court discerns only two: fraud[7] and

---

6. The Court chose to address Plaintiff's failure to maintain required business hours, rather than the existence of customer complaints or Plaintiff's failure to timely pay amounts due Defendant, because it was the clearest argument supporting summary judgment in Defendant's favor. The Court believes, however, that Defendant would also prevail on the other two grounds.

7. Plaintiff's "Second Cause of Action" claims that Defendant falsely represented that Plaintiff's franchise would be renewed. Original Complaint, Dec. 17, 1987, ¶¶ 18–23. Plaintiff's "Third Cause of Action" claims that Defendant is precluded by its misrepresentations from nonrenewing the lease. *Id.*, ¶¶ 24–25. Plaintiff's "Fourth Cause of Action" claims that Defendant's misrepresentations constituted a modification and extension of the franchise agreement which Defendant is estopped from nonrenewing and to which Defendant has waived any right to nonrenew. *Id.*, ¶¶ 26–27. Plaintiff's third and fourth causes of action are not valid causes of action. Rather, they state possible

consequences of Defendant's fraud if in fact fraud occurred.

If fraud did occur and Defendant was estopped from using § 2803(c)(1) as a means for nonrenewing the trial franchise or had waived its right to proceed under that section's less restrictive provisions, the Court would conclude that under § 2802, providing for nonrenewal of a regular franchise, Defendant's nonrenewal was valid due to Plaintiff's failure to maintain required business hours. *See Wojciechowski*, 483 F.Supp. at 115 (franchiser's misrepresentations deprived him of benefits of § 2803 and required that its termination be reviewed under § 2802).

Plaintiff does not argue that Defendant's alleged misrepresentations modified the trial franchise agreement to the extent that it was removed from the purview of the PMPA and became a "mere" contract. The Court is aware of no authority which would support such an argument. If such an argument was cognizable, however, it is unlikely that it would be successful in this case because the summary judgment evidence indicates that no misrepresentations

breach of fiduciary duties. In his fraud claim, Plaintiff asserts that Defendant, through its agents, promised that his franchise would be renewed conditioned on "normal maintenance and operation of the facility" and that Defendant promised Plaintiff that he would "receive a new and modernized facility...." Original Complaint, Dec. 17, 1987, ¶¶ 19–20. In his breach of fiduciary duties claim, Plaintiff argues that the franchise relationship between Plaintiff and Defendant constituted a fiduciary relationship, and Defendant breached its fiduciary duties by "knowingly using false reasons for non-renewal, [by] its sharp dealing in its own self-interest, and [by] its retaliating tactics against Plaintiff...."[8] Plaintiff basically prays for relief in the form of monetary damages and an order compelling Defendant to continue its franchise relationship with Plaintiff. *Id.*, ¶¶ 31–37.

On their face, both of Plaintiff's claims concern Defendant's nonrenewal of the trial franchise. To the extent Plaintiff seeks to compel Defendant to continue the franchise relationship, Plaintiff's claims have the obvious and direct effect of seeking to continue a relationship validly terminated under the PMPA. Courts have consistently held that the PMPA preempts state common law in the wrongful termination area. *E.g., Continental Enterprises, Inc. v. American Oil Co.,* 808 F.2d 24, 27–28 (8th Cir.1986); *In re Herbert,* 806 F.2d 889, 892 (9th Cir.1986); *Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907, 915 (6th Cir. 1986); *Graeber v. Mobil Oil Corp.,* 614 F.Supp. 268, 271 (D.N.J.1985); *Iannuzzi v. Exxon Co., U.S.A.,* 572 F.Supp. 716, 722 (D.N.J.1983); *Huth v. B.P. Oil, Inc.,* 555 F.Supp. 191, 194 (D.Md.1983). *Contra Civitella v. Shell Oil Co.,* 656 F.Supp. 144, 146 (D.Ariz.1986). A number of courts have specifically held that "the PMPA preempts a state law action when the action arises out of the franchise termination or is an incident of the termination." *Continental Enterprises,* 808 F.2d at 27 (and cases cited therein and at 28). The test which has been articulated is "whether the purported acts giving rise to the claim should be characterized as independent of or in relation to the termination." *Id.* (quoting *Grogan v. Shell Oil Co.,* No. 85–C–9254 (N.D. Ill. May 14, 1986) [1986 WL 6091]. "If the acts giving rise to the state law claims were related to the termination, then the state law claims were preempted by the PMPA." *Id.* In the case at hand, both of Plaintiff's claims are directly related to Defendant's nonrenewal of the trial franchise because both of the claims contest Defendant's nonrenewal. Plaintiff's complaint does not allege different factual allegations supporting these claims, but refers the Court to the factual allegations supporting the PMPA claim and incorporates those allegations in the state law claims by reference. Original Complaint, Dec. 17, 1987, ¶¶ 18, 28. Plaintiff's state common law causes of action are thus preempted by the PMPA.

■ Furthermore, as to Plaintiff's breach of fiduciary duties claim, even if the claim was not preempted by the PMPA, the Court would dismiss it because the PMPA, through which the parties entered into their franchise relationship, "does not create a fiduciary duty between the franchiser and the franchisee." *Cason v. Texaco, Inc.,* 621 F.Supp. 1518, 1525 (M.D.La.1985).

---

were made to Plaintiff regarding renewal of his franchise. Plaintiff admits that the franchise agreement provided that there was no obligation on the part of either party to renew or extend the lease. Oral Deposition of Jose Esquivel, Jr., Vols. I and II, Feb. 29, Mar. 1, 16–17, 1988, at 363–64. He admits that both the cover letter accompanying the agreement and the agreement itself stated that the agreement could not be modified orally. *Id.* at 354–55. He testified that the sole basis for his allegations concerning misrepresentations as to future renewals was his assumption that his franchise would be renewed because he was not apprised by Defendant of any deficiencies in his performance, and his further assumption that he could expect to remain at the station indefinitely because the possible future remodeling of the station was discussed with him from time to time. *Id.* at 18, 600–05. Plaintiff has brought forth no evidence indicating that Defendant or its agents ever represented to Plaintiff that his franchise would be renewed.

8. Plaintiff's claims of "sharp dealing" and "retaliating tactics" have never been more fully explained.

**898**

IV. Conclusion

Because Defendant validly terminated Plaintiff's trial franchise, pursuant to 15 U.S.C. § 2803(c)(1), and because Plaintiff's state common law claims of fraud and breach of fiduciary duties are preempted by the PMPA, the Court finds that summary judgment should be entered in Defendant's favor such that Plaintiff's claims against Defendant should be dismissed.

Accordingly, it is hereby ORDERED that Defendant Exxon Corporation's Motion for Summary Judgment is GRANTED such that summary judgment is ENTERED in Defendant's favor and Plaintiff's claims against Defendant are DISMISSED.

It is further ORDERED that Defendant Exxon Corporation's Request for Hearing on Defendant Exxon Corporation's Motion for Summary Judgment is DENIED.

It is further ORDERED that the docket call and jury trial set to commence in this case on Monday, November 14, 1988, at 9:30 a.m. are CANCELLED.