In The



Court of Appeals



Ninth District of Texas at Beaumont


 

____________________


 

NO. 09-03-140 CV


____________________



 SUN CHASE ENTERPRISES, INC. d/b/a DELAWARE FOOD MART AND 


AGA ENTERPRISES, INC. d/b/a CHEVRON FOOD MART #1


AND CHEVRON FOOD MART #2, Appellants



V.



SWATI ENTERPRISES, INC., d/b/a PAK OIL COMPANY


AND MOHAMMAD A. SWATI, Appellees






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Court Cause No. E-165,302-A






OPINION



 We withdraw our prior opinion and judgment, and substitute this one in its place;
we overrule the motion for rehearing. 



 Appellants AGA Enterprises, Inc. and Sun Chase Enterprises, Inc. sued Swati
Enterprises, Inc. d/b/a, Pak Oil, and Mohammad A. Swati (1) for tortious interference with
prospective business relations. Swati argued plaintiffs' suit was preempted by the
Petroleum Marketing Practices Act ("PMPA"). See 15 U.S.C.A. §§ 2801-2841 (West
1998). The district court granted summary judgments against AGA and Sun Chase. 
Appellants challenge only the judgment against AGA. We hold the PMPA does not
preempt AGA's claim, and reverse and remand the case to the district court. 

 The PMPA provides a uniform set of standards for the termination or nonrenewal
of motor fuel marketing franchises, and for the notice which franchisors must provide
franchisees before termination or nonrenewal. See 15 U.S.C.A. §§ 2802, 2804 (West
1998); see also Continental Enters., Inc. v. The American Oil Co., 808 F.2d 24, 26 (8th
Cir. 1986). The Act protects a franchisee from arbitrary or discriminatory termination or
nonrenewal of the franchise. Bellmore v. Mobil Oil Corp., 783 F.2d 300, 304 (2d Cir.
1986). The Act's provisions also recognize a franchisor's legitimate need to terminate or
not renew a franchise relationship under specified circumstances. See id. at 304, n.2. 

 Section 2806, the preemption clause of the PMPA, provides as follows:



 (a) Termination or nonrenewal of franchise

 (1) To the extent that any provision of this subchapter applies to the
termination (or the furnishing of notification with respect thereto) of any
franchise, or to the nonrenewal (or the furnishing of notification with respect
thereto) of any franchise relationship, no State or any political subdivision
thereof may adopt, enforce, or continue in effect any provision of any law
or regulation (including any remedy or penalty applicable to any violation
thereof) with respect to termination (or the furnishing of notification with
respect thereto) of any such franchise or to the nonrenewal (or the furnishing
of notification thereto) of any such franchise relationship unless such
provision of such law or regulation is the same as the applicable provision
of this subchapter.

 . . . .

15 U.S.C.A. § 2806(a)(1) (West 1998). A conflicting state law concerning termination
or nonrenewal of a motor fuel franchise is preempted by the federal statute. See Cason v.
Texaco, Inc., 621 F. Supp. 1518, 1524 (M.D. La. 1985). 

 Appellants argue this case is not about cancellation or nonrenewal of a franchise
agreement. They say appellees tortiously interfered with appellants' prospective business
relations with other gasoline wholesalers. A jobber agreement existed between Swati
Enterprises (d/b/a Pak Oil Company) and AGA (d/b/a Chevron Food Marts # 1 and # 2)
in which AGA agreed to sell only Chevron products and to brand its two stations as
Chevron stations. But, says AGA, the jobber agreement did not provide that AGA had to
purchase petroleum products exclusively from Swati. AGA says Swati tried to create a
"monopoly" and AGA refused to go along with it. 


 The record includes appellants' letter to Swati in which appellants acknowledged
they owed money on their gasoline account with Swati, indicated there was enough money
in their escrow account to cover what they owed, stated they were free to buy gasoline
from whomever they chose, and indicated they were prepared to "debrand" because of
Swati's refusal to sell them gasoline. AGA says Swati wanted AGA to sign an exclusive
agreement that would have compelled AGA to purchase petroleum products only from
Swati. Attached to AGA's response to Swati's motion for summary judgment is the
agreement, signed by Swati but not by AGA. AGA says that when it refused to sign the
exclusive agreement, appellees contacted other Chevron product suppliers and urged them
not to sell petroleum products to AGA. The record includes Swati's June 6 and 19, 2001, 
letters informing another supplier that Pak Oil had a contract to furnish fuel to several
stores owned by Inayat Khoja and Barkhat Khoja. Inayat Khoja is the president of AGA. 
One letter to a supplier stated as follows:

 I have been retained by [Swati] to protect a contractual agreement with the
Khoja brothers, with relation to certain of their stores. You have previously
received a warning letter from me on behalf of Swati Enterprises, Inc. 

 

 This letter is to put you on notice that any interference with the contractual
rights of [Swati] will be immediately restrained, enjoined, and a damage suit
will be filed against those parties responsible. No person, firm, or
corporation should interfere in any way with any current agreements, fuel
contracts, or otherwise between these parties. . . . 


 Swati maintains the tortious interference claim arises out of and is incident to the
termination of the franchise. Swati relies on Mercer v. Texaco, Inc., No. 3:98-CV-1011-R, 1999 U.S. Dist. LEXIS 9958 (N.D. Tex. 1999)(unpublished). Mercer, unlike AGA,
initially filed suit in federal court against a distributor under the PMPA for wrongful
termination and wrongful debranding; two years later he filed suit in state court against a
refiner for tortious interference with contract and wrongful debranding. Id. at *2-6. The
federal court to which the state cause was removed concluded Mercer had no evidence to
support any claim of tortious interference. Id. at *11-12. In addition, the court held
Mercer's claims against the refiner were preempted by the PMPA, because the tortious
interference claim was a "mere rephrasing" of the PMPA claims and the wrongful
debranding was "facially tied" to termination. Id. at *12-13.

 In contrast, AGA makes no claims concerning the termination of the franchise. 
Swati's letters relied on the continuing viability of the franchise contract rather than its
termination. Swati terminated the franchise after litigation had already begun on
appellants' tortious interference claim. 

 The federal courts have addressed the scope of preemption intended by section
2806(a). See Seckler v. Star Enter., 124 F.3d 1399, 1404 (11th Cir. 1997). Some apply
a restrictive test, others an expansive one. Id. Some courts view the language in the
clause and its legislative history as making clear a Congressional intent to "'occupy the
field relating to termination and non-renewal of petroleum franchises.'" See Jimenez v. BP
Oil, Inc., 853 F.2d 268, 273 (4th Cir. 1988) (quoting Tousley v. North Am. Van Lines, 752
F.2d 96, 101 (4th Cir. 1985)). Under this view, the PMPA preempts a state law action
when the action arises out of the franchise termination or is an incident of the termination. 
See generally Continental Enters., 808 F.2d at 27-28 (discussion of federal district court
cases). But other federal courts say the scope of the preemption clause is limited to those
state laws that regulate the grounds for, procedures for, and notification requirements of 
termination or nonrenewal. See Seckler, 124 F.3d at 1404. Viewed restrictively, the
PMPA does not preempt state laws which "only incidentally affect franchise termination
or nonrenewal." Unocal Corp. v. Kaabipour, 177 F.3d 755, 768 (9th Cir. 1999). 

 Under either approach, this case is not preempted by the PMPA. The PMPA does
not attempt to govern everything that happens in a motor fuel franchise relationship. State
contract law continues to govern where not preempted, as does state tort law. See O'Shea
v. Amoco Oil Co., 886 F.2d 584, 593 (3rd Cir. 1989) ("The goal of the framers of the
PMPA was to create a uniform system of franchise termination, not a uniform system of
contract law."). This claim is not an incident of the termination or nonrenewal of a
franchise agreement but rather stems from Swati's effort to "protect" its contractual
agreement. AGA does not complain of its inability to buy gasoline from Swati; AGA
complains of Swati's alleged interference with AGA's attempt to purchase gasoline from
other suppliers. 

 AGA filed suit on July 3, 2001. In its brief on appeal, Swati's counsel explains
what occurred next as follows: "At the second hearing on the temporary injunction held
July 23, 2001 . . . , Pak Oil Company terminated both its franchise agreement and
relationship with . . . Chevron Food Marts based upon their failure to pay their past due
bills for fuel which had been delivered to them by Pak Oil Company." The record from
the July 23, 2001, hearing reads in part as follows: 

 [Swati's Counsel]: [W]e consider . . . the written fuel contract breached,
which is admitted the debt is owed, and the contract has been terminated.

 Therefore, we do not intend to try to protect that contract. [T]he other
parties may deal with whomever they want to, whenever they want to,
whoever they can pay; and we are relieved of that contract. They are
relieved of that contract, as well as any other oral agreements.

 . . . .

 [Court]: And it's your position that they may do business with whomever
they wish?

 

 [Swati's Counsel]: Certainly. Certainly. And the only thing that I'm able to
ascertain from the pleadings specifically is they want us to write the fuel
distributors that we have written about our trying -- our trying to enforce our
contract. We are more than happy to write those distributors and tell them
exactly what our position is and that they may do business with these
gentlemen any time anywhere. 


 The claim here involves the proper interpretation of the franchise contract, and the
parties' rights thereunder, while the franchise agreement was in place. The claim made
by AGA is that Swati's conduct was not justifiable under the contract and was
independently tortious or unlawful. See generally Wal-Mart Stores v. Sturges, 52 S.W.3d
711, 726-27 (Tex. 2001) (explaining elements of tortious interference with a prospective
business relation). No conflict exists between appellants' claim of a tortious interference
with a prospective business relation with another supplier and the PMPA's governance of
Swati's termination of the motor fuel franchise. 

 Whether plaintiffs have a meritorious claim for tortious interference is an issue of
Texas state law that we need not decide in this appeal, because the only basis for the
summary judgment was federal preemption. Nothing in this opinion should be interpreted
as supporting the merits of plaintiffs' state law claim. Nor do we decide the merits of any
PMPA claim based on the termination of the franchise. We hold only that a claim for
tortious interference with prospective business relations is not preempted by the PMPA
where the state law claim is not an incident of the termination or nonrenewal of the
franchise. 

 Issue one is sustained. The summary judgment is reversed and the case is remanded
to the trial court for further proceedings. 

 REVERSED AND REMANDED.

 _________________________________

 DAVID B. GAULTNEY

 Justice




Submitted on April 29, 2004

Opinion Delivered August 26, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ. 
1. The appellees are collectively referred to as Swati.