WALTER HYGEMA, *et al.*, v. S. C. MARKLEY.

187 So. 373.
Division A.
Opinion Filed February 28, 1939.
Rehearing Denied April 6, 1939.

*W. H. Nollman,* for Appellants;

*Haskins & Fielding,* for Appellee.

BUFORD, J.—The appeal brings for review a final decree containing *inter alia* the following

"IT IS THEREUPON ORDERED, ADJUDGED AND DECREED as follows, to-wit:

"1. That the Decrees *pro Confessos* heretofore entered herein against Virgil Everets, Willie Belle Bartons, Ty Cobb, Hattie Williams, Julia Brunson, also known as Julia Brensen, Mamie Robertson, Nola Daniels, Laura Butler also known as Lora Butler, Hillyarde Myers also known as Hilliard Myers, Willie Bartons, George White, Charlie Rouse, P. R. King, also known as Preston R. King, Essex Robert-

son, Mamie Robertson and Quinn Wood, defendants in this cause, and each of them be, and they are, hereby ratified, approved and confirmed by the court.

"2. That there is due from the defendant Walter Hygema to the plaintiff on account of the contract for deed herein foreclosed, the following amounts, to-wit:

Principal .................................................................$2050.00
Interest at 6% per annum from Jan. 31, 1933,
    to April 25th, 1938 ............................................. $1265.50

Total Principal and Interest ........................................ $3315.50
Less payments made by the defendant ...................... $ 282.49

                                                  $3033.01

Amounts advanced by the plaintiff on account
    of taxes due and unpaid against the property
    involved in this suit ..................................................... $ 206.73
Amounts advanced by the plaintiff on account
    of insurance premimus on the buildings lo-
    cated on the property involved in this suit.............

                                Total     $3239.74

"Together with all singular the costs, charges and expenses of this suit, including sheriff's fees incurred herein, together with interest thereon at the rate prescribed by law from the date of the entry of this decree until the same be fully paid.

"It Is Further Ordered, Adjudged and Decreed that the defendant Walter Hygema pay to the plaintiff within one day from the date of the entry of this decree the amount found to be due the plaintiff, as hereinabove set forth, together with interest thereon, as aforesaid, and that in default

of such payment by the defendant to the plaintiff that the property described in said contract for deed herein foreclosed and in the bill of complaint on file herein, situate, lying and being in the County of Highlands, State of Florida, and more particularly described as follows, to-wit:

"Farm Fifty (50) in Section 21, Township 34 South, Range 29 East, as said Farm is distinguished on the recorded plat of Lake View Park Tract, in the public records of De-Soto County (now Highlands County) Florida, in Plat Book 3, at page 4, be sold by W. L. Long, the Special Master in Chancery, appointed in this cause, at public outcry, to the highest and best bidder for cash," * * *

Then follows further directions for the sale and other matters not necessary to be discussed here.

The bill of complaint named as defendants Walter Hygema, Will George, Virgil Everets, Hilyarde Myers also known as Hilliard Myers, Willie Belle Bartons and Willie Bartons, Lora Butler, Ty Cobb, George White, Nig Lott and l ucille Lott, Charlie Rouse, Hattie Williams, Julia Brunson also known as Julia Brenson, P. R. King also known as Preston R. King, Laura Elsby and Wood Elsby, Edmund Ashley also known as Ashley Edmond, and Charity Edmond, J. B. Kearney, Earnest Kinsey, also known as Enice Kincey, Mamie Robertson and Essex Robertson, George McNeal and Maggie McNeal, Quinn Wood, Nola Daniels, George McNiel, B. J. Burgess, Effie Smith, Tom Robinson, Marge Cooper, E. U. Meadows and Bossie Watson, all of which defendants are residents of Highlands County, Florida, and all of which said defendants are over the age of 21 years. The bill then alleged that the named defendants except Hygema and each of them, have or claim some right, title or interest in and to the lands hereinabove described, or some portion thereof by reason of certain agreements or contracts, or leases by and between the said defendants and the defend-

ant Walter Hygema, the exact nature of the claim of said defendants, and each of them, being to the plaintiff unknown, but the plaintiff alleges that whatever right, title, interest or claim the said defendant, or either of them, may have in and to said land, or any part thereof, is subject, subordinate and secondary to the lien of the plaintiff herein sought to be foreclosed.

And it was further alleged

"That a portion of the land hereinabove described is improved, that is to say, there are now situate on said land a number of dwelling houses capable of being occupied, and a large portion of which are occupied, and the persons occupying said houses are paying rent therefor, or other income, for the use of said houses to the defendant Walter Hygema and the said property if properly handled and managed is capable of and could be made to produce income, revenue and profit; that the defendant Walter Hygema is insolvent; that the lands hereinabove described if sold at a Master's sale under a decree of this court would not bring a sum sufficient to pay your orator the amounts now due to him under the terms of the agreement hereinabove set forth; that the houses situate on said land are being neglected and are not being kept in a proper state of repair and are or have been for some time deteriorating as a result of lack of proper care and making the necessary repairs thereon. WHEREFORE, by reason of the default of the defendant in the payments of the amounts which have already become due and payable under the terms of the agreement hereinabove referred to and by reason of the non-payment of the taxes levied and imposed upon said real estate as hereinabove set forth, the plaintiff brings this his bill of complaint for the collection of all sums which have become due under the terms of said agreement and which may become due under the terms of said agreement, during the pendency of this suit

and prior to the entry of a final decree herein, and for the collection also of all taxes levied and imposed against said real estate and which have not been paid by the defendant, and all costs, charges and expenses of this suit."

After decree *pro confesso* was entered the named defendants were Walter Hygema, Will George, Nig Lott, Julia Brensen, Laura Elsby, Wood Elsby, Edmund Ashley known also as Ashley Edmond, Charity Edmond, J. B. Kerney, Ernest Kinsey, George McNeal, Maggie McNeal, George McNeil, B. J. Burgess, Effie Smith, Tom Robinson, Marge Cooper, E. U. Meadows and Bossie Watson.

The defendants Earnest Kinsey also known as Enice Kinsey, Bossie Watson, J. B. Kerney, Will George, Effie Smith, Tom Robinson, George McNeal, and Maggie McNeal, Laura Elsby and Wood Elsby, B. J. Burgess, Edmund Ashley also known as Ashley Edmond and Charity Edmond, Nig Lott and Lucille Lot and Marge Cooper, jointly and severally moved to dismiss the bill. Walter Hygema moved to dismiss the bill and also filed his answer. Motions to dismiss were denied and the answer of Hygema was held insufficient. New answer and motion to dismiss was filed by Hygema. Paragraph four of the latter answer was as follows:

"Further answering said bill of complaint, and as a defense thereto, the defendant, Walter Hygema, alleges that at the time of entering into the contract mentioned in the said bill of complaint there were seven houses upon said premises; that one of said seven houses, to-wit: the house of Effie Smith, located on Lots 22 and 23 of Block 1023, was moved to a more favorable location and the said house greatly improved, increasing its value $500.00; and that since entering said contract, the house and property of Tom Robinson was greatly improved, by means of laying walks, painting and repairing of the said house, which made the

increase of the house and premises in value of $500.00. That in addition to the improvement of said two houses, the defendant not only placed five houses on the said premises, but that in addition to the seven houses on said premises above mentioned, the defendant has either moved on said premises or built on said premises sixteen houses upon the following lots and which houses have the following value, to-wit:

| | |
|---|---|
| Lots 18 and 17 of Block 1021 | $1200 |
| Lot 1 and 2 Block 1021 | 1200 |
| Lot 10 and East ½ of Block 1021 | 400 |
| Lot 12 and West ½ of Block 1021 | 500 |
| Lot 13 and East ½ of 14 of Block 1021 | 500 |
| Lot 15 and West ½ of 14 of Block 1021 | 450 |
| Lot 16 and East ½ of 17 of Block 1021 | 450 |
| Lot 18 and West ½ of 17 of Block 1021 | 500 |
| Lot 19 and East ½ of 20 of Block 1021 | 500 |
| Lot 21 and West ½ of 20 of Block 1021 | 400 |
| Lot 23 and 22 of Block 1021 | 600 |
| Lot 15 and East ½ of 16 of Block 1020 | 200 |
| Lot 17 and West ½ of 16 of Block 1020 | 1200 |
| Lot 20 of Block 1020 | 400 |
| Lot 21 and 22 of Block 1020 | 1500 |

Total value    $10,000

"That there has been a great deal of money expended on the part of the defendant, Walter Hygema, to buy said houses and to recondition them and move them on said premises or to build said houses on said premises, and that the plaintiff and/or his duly authorized agents from the time of entering into said contract and from time to time either prior to or at the time said several houses totaling 16 in number were placed or built upon said premises, encouraged

the said defendant, Walter Hygema, to use his money in making said improvements, and they have stated to him that because of his doing this that he need not worry about the payments on the contract because they would prefer him to put his money in the improvements instead of meeting the payments and that they would not foreclose the mortgage because of defaults therein, as long as the improvements that he was putting upon the property would give them ample security so that in the end they would not lose money. That because of such statements and promises, the defendant, placed and built so many houses upon said premises and used his money for such purposes rather than to save his money to meet the interest and principal payments falling due. That the defendant, Walter Hygema, has continuously placed new improvements in said houses, and has spent his money for repairs and upkeep rather than to pay taxes and meet payments under the contract, and that this was all done depending upon the promises of the said plaintiff and/or his duly authorized agents, and that to permit the property to be taken by foreclosure on account of the defaults named in the bill of complaint would work a great hardship and an injustice to the said defendant, and such injustice would be so great as to shock the conscience of the court. That in several instances the defendant, Walter Hygema, in discussing the matter with the plaintiff and/or his duly authorized agents told them that he was using all of his means to make such improvements, and that there might be a time when he would be hard pressed and would not have money to meet the instalments because of putting so much money in said improvements, and he was always given the assurance that everything would be all right, and that he would not lose the property as long as there was such security there so that the plaintiff would not lose money in the end. That because of the

facts as above stated the plaintiff has waived the defaults, and should be estopped to declare them a breach of the contract, as the value of said property and improvements more than give the plaintiff ample security."

On motion this paragraph was stricken and the motion to dismiss was denied. Hygema filed further answer and on motion parts thereof attempting to raise like issues as those presented by paragraph four, *supra,* were stricken. Marge Cooper, Bossie Watson, Ernest Kinsey, Effie Smith, Edmund Ashley alias Ashley Edmond, Charity Edmond, J. B. Kerney, Will George and B. J. Burgess, George McNeal, Maggie McNeal, Nig· Lott and Lucille Lott filed answers. Motion to strike answers and portions of answers were interposed and granted.

Hygema, with leave of court, filed an amended paragraph Four of his answer, as follows:

"Further answering said bill of complaint and as a defense thereto, the defendant, Walter Hygema, alleges that after entering into the contract, Exhibit A in said bill, the plaintiff S. C. Markley, visited Sebring, Florida, from time to time and up to the summer of the year 1936, and inspected the property and conferred with the defendant, Walter Hygema, and commended him for placing so many improvements upon the property being foreclosed by this suit. That the said Walter Hygema had placed over $10,000.00 of improvements on said premises since entering into the said contract with the plaintiff. That when the plaintiff conferred with the said defendant from time to time up to the summer of the year 1936, he told the said defendant that in consideration of him making such vast improvements he would not foreclose the said mortgage on account of the breaches of said mortgage then existing which included breaches to and including those occurring during the prior to the year 1936, and thereby the plaintiff has waived the right to foreclose the said mortgage on account of breaches

occurring during and prior to the year 1936, and those breaches should not now be considered by this court as grounds for foreclosure. That said defendant is ready, willing and able to pay to the plaintiff the breaches occurring since the year 1936 and asks the decree of this court that upon so doing that this foreclosure suit be dismissed."

On motion same was stricken.

Testimony was taken and reported to the Chancellor and decree entered as hereinbefore stated.

The contract, which is the basis of the foreclosure, contained *inter alia,* the following pertinent provisions:

"1. The party of the first part covenants and agrees, upon payment of purchase consideration under terms hereinafter set forth that as such Trustee and in his individual capacity, he will convey to party of the second part the following property situate in Highlands County, Florida, more particularly described as follows:

"Farm 50 in Section 21, Township 34 South, Range 29 East, as said Farm is distinguished on the recorded plat of Lake View Park Tract, in the public records of DeSoto County (now Highlands County) Florida, in Plat Book 3, page 4, to which reference is hereby made.

"2. The party of the second part covenants and agrees to pay to the party of the first part, as total purchase consideration for the above described property, the sum of Four Thousand ($4,000.00) Dollars in a manner following, to-wit:

"Exhibit 'A'

"No payment on principal during the first year; Three Hundred ($300.00) Dollars on principal the second year, payable in two installments of $150.00 each, eighteen (18) months and two (2) years from date hereof; Five Hundred ($500.00) dollars the third year in semi-annual pay-

ments of Two Hundred Fifty ($250.00) Dollars each; Six Hundred ($600.00) Dollars the fourth year in semi-annual payments of Three Hundred ($300.00) Dollars each; Seven Hundred Fifty ($750.00) Dollars the fifth year in semi-annual payments of Three Hundred Fifty ($350.00) Dollars each; Eight Hundred ($800.00) Dollars the sixth year in semi-annual payments of Four Hundred ($400.00) Dollars each, and Eleven Hundred ($1100.00) Dollars the seventh year in semi-annual payments of Five Hundred Fifty ($550.00) Dollars each. All semi-annual payments shall be the same date as to day and month as the $150.00 payments during the second year. In other words, all semi-annual payments shall start and continue from eighteen (18) months after date hereof. Deferred payments shall bear interest at the rate of 6% per annum, payable annually, during the first two years and payable semi-annually thereafter.

"3. The party of the second part shall have the right to make payment in full of purchase consideration on any semi-annual payment date, with interest computed to such date.

"4. The party of the first part shall have the right to execute and deliver a deed to party of the second part and to demand from party of the second part a purchase money mortgage securing notes in amount, maturity date and interest, as above provided for purchase payments under this contract and the execution and delivery of deed and purchase money mortgage shall immediately rescind this contract.

"5. As a further consideration for purchase under the terms of this contract and to off-set the smallness of the purchase consideration paid, the party of the second part covenants and agrees within twelve (12) months from date

hereof to place upon the above described premises at least five houses of at least four rooms each. Party of the second part may elect to either move houses upon premises or to construct the same thereon, but it is expressly covenanted and agreed that houses so moved shall be and constitute a part of the realty and that in the event of failure of the party of the second part to perform this contract that said houses so placed or constructed on said premises shall be retained by party of the first part, not as a forfeiture but as an agreed and liquidated damage by the party of the first part sustained because of and owing to such breach.

"6. It is mutually covenanted and agreed that upon payment to party of the first part by party of the second part of the sum of Fifty ($50.00) Dollars, that party of the first part at the same expense of party of the second part, will release any vacant .lot as designated on the plat of Highland View, Plat Book 2, page 91, public records of Highlands County, Florida, the said Highlands View being a sub-division of property hereinbefore described, and that all payments for release of lot or lots shall be credited on the last payment maturing under the terms hereof. In the event of exchange of deed and purchase money mortgage, as herein before provided, releases shall be given from said mortgage for like sum and payment credited on last maturing note secured by said mortgage.

"It is recited and declared that certain parties formerly held contracts for purchase of lots or portions thereof, as per Highland View Sub-Division hereinbefore mentioned, that such contracts of purchase were held by certain colored individuals who had made substantial payments thereon, that contracts for the sale of such properties to said colored individuals were made by one Vance at that time the fee owner of said property; that said property was encumbered by purchase money mortgage given or assumed by the said

Vance, which was subsequently foreclosed with the said colored individuals parties defendant thereto and the rights of the mortgagee adjudicated as prior in dignity to the equities held by said colored individuals under said contracts, but that the party of the first part subsequently to acquisition of title of said lands has verbally agreed with said colored individuals, although not obligated so to do, to protect their equities by selling any and all said properties purchased under said contracts at and for the balance due and owing the said Vance, and the party of the second part in accepting this contract or deed and giving purchase money mortgage hereunder, expressly covenants and agrees to release and/or convey to the following individuals the following lots, to-wit:

"To Marge Cooper, Lot 23, 24 and 25, Block 1021

To Enice Kinsey, Lot 9 and $E\frac{1}{2}$ of Lot 10, Block 1022

To E. U. Meadows, $W\frac{1}{2}$ Lot 13 and Lot 15, Block 1023

To Bossie Watson, Lots 10, 11 and 12, Block 1023

upon payment to party of first part by said parties of the balance due on contract of sale and purchase executed between said parties and to said Vance, but the parties hereto mutually covenant and agree that conveyance may be made to said parties by way of compromise at and for a release consideration, and the parties hereto mutually covenant and agree that J. H. Garst of Sebring, Highland County, Florida, is hereby accepted and delegated by the parties hereto with full authority to approve such conveyance under such compromise, and that his findings in the matter shall be final and acceptable to both parties hereto.

"It is recited that the intention of this part of the agreement is to carry into effect the verbal promise made by party of the first part with colored individuals above designated."

And it also contains the following provision:

"9. It is further mutually covenanted and agreed between the parties hereto that upon the breach of the terms and conditions of this contract by the party of the second part that this contract shall immediately cease and become null, void and of no effect and the party of the first part shall have the right to immediately reenter upon said premises and take possession of the same, subject only to such conveyances or releases as may be executed and delivered hereunder."

The appellant asks us to determine four questions which are stated as follows:

"First: Does a donee-beneficiary's rights in land declared in a contract to sell that land to a third party give the donee-beneficiary a vested right that cannot be cut off merely on account of the default of the contract holder?

"Second: When a contract covering an entire subdivision is executed to a party, containing a release clause, the maker of the contract understanding that the contractee is taking the land for the purpose of reselling individual lots, can individuals taking contracts of purchase from the holder of the contract for the entire sub-division individually insist on releasing their individual lots after the holder of the contract for the entire subdivision has defaulted?

"Third: Can the defense of estoppel or waiver be set up against an owner foreclosing a contract when the owner has induced the holder of the contract to use all his money to make vast improvements on the property under a promise that he would not foreclose on account of the installments and interest then due?

"Fourth: In the foreclosure of a contract alleging breach of certain installments, which contract does not contain an acceleration clause, the contract covering an entire

sub-division, which all parties understood would be resold in individual lots, is it error for the court to decree that the entire subdivision be sold on account of the non-payment of certain installments and interest, on the contract covering the entire subdivision instead of decreeing part of the land sold to meet these payments?"

It will be observed that the final decree provides:

"That there is due from the defendant Walter Hygema to the plaintiff on account of the contract for deed herein foreclosed, the following amounts, to-wit:

Principal ............................................................$2050.00
Interest at 6% per annum from Jan. 31, 1933
     to April 25th, 1938 ................................ 1265.50
Total Principal and Interest ..............................$3315.50
Less payments made by the defendants ................ 282.49
                                                                 $3033.01

Amounts advanced by the plaintiff on account
     of taxes due and unpaid against the
     property involved in this suit ............................ 206.73
Amounts advanced by the plaintiff on account
     of insurance premiums on the buildings
     located on the property involved in this
     suit ........................................................................$
                                                                  $3239.74"

This was the amount found to be due and in default.

The decree further provides:

"And provided further, that if the plaintiff herein is the highest and best bidder at said sale said plaintiff, or his assigns, after paying to the Special Master a sum in cash sufficient to pay all costs, charges and expenses of this suit,

including a fee to the Special Master, may then take credit on the amount found to be due him herein for the amount of said bid, less said costs, charges, expenses and fees in lieu of cash, provided further, that the court finds that there is a balance due on account of the contract hereinbefore foreclosed of $1950.00 for principal plus the amounts hereinbefore found to be due for principal, together with interest thereon at the rate of 6% per annum from April 25th, 1938 until the same be fully paid; that said balance of principal had not at the time of the entry of this final decree become due and payable under the terms of the final decree herein foreclosed and the plaintiff herein, who is the present rightful owner and holder of the contract for deed herein foreclosed is entitled to payment of said balance of principal sum due, together with interest as aforesaid, and said Special Masters Sale hereinabove ordered and directed to be held is subject to the rights of the plaintiff under and by virtue of said contract for said balance due in any purchaser at said Master's sale subject to the rights of the plaintiff in and by virtue of said contract, and the Special Master is ordered and directed that in and by the notice of sale hereinabove provided for, that he put all persons on to notice that there is a balance remaining due under the terms of said contract and that any purchaser at said sale will take subject thereto, and this court hereby expressly finds and declares that these proceedings and the entry of this final decree and any sale held hereunder will in no wise effect or impair the lien of the plaintiff in and by virtue of the contract herein foreclosed, insofar as the balance due under the terms of said contract for principal and interest, as hereinabove referred to and designated, is concerned."

It, therefore, appears that the decree provided for the foreclosure of the contract for the amount in default with

taxes paid by the plaintiff, together with interest and costs, and also found that a further sum would be due and payable under the contract for which the plaintiff would have a lien on the property and thereupon ordered the sale of the property subject to such continuing lien.

The fourth question presents the contention that the decree was erroneous in this regard and that the decree should have provided that only so much of the property contracted to be conveyed should be sold as might be found necessary to discharge that part of the lien which had accrued by reason of the defaults occurring prior to the entry of the decree. As to whether or not the entire plat should have been sold under the terms of the decree or it should have been sold by piece-meal to satisfy the decree, was a matter within the judicial discretion of the Chancellor and there is no showing that that judicial discretion was abused.

We shall now return to consideration of the first question by reference, *supra*. We think the question is inapplicable because it is not shown by the record that the so-called donee-beneficiary's rights in the lands conferred any vested right in the beneficiaries because the so-called donee-beneficiaries and the grantee in the sales contract are not shown to have complied with the terms of the contract in such manner as to create in them any vested interest.

It will be recalled that the record shows that these donee-beneficiaries had been foreclosed of their rights in and to parts of the property involved and that the subsequent owner, who was the grantor in this sales contract, verbally agreed with them if they would pay the balance found to be due under their respective contracts that he would give them the benefit of what they had already paid and convey the respective lots to them. But, there is no showing that they complied with this verbal agreement or that they had met the conditions named in the sales contract.

We will next consider the contentions presented under the Third question, *supra*. The Appellant is bound by the allegations contained in his pleadings. In the original and amended paragraphs 4 of his Answer he set up the fact that he had made various improvements on the property subsequent to execution of the contract, consisting of houses erected on the property involved. The appellants cite the case of Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 Sou. 751. We cannot hold that this case is in point because the ·alleged forbearance was without consideration. It is true the purchaser was making improvements on the property but he was making these improvements, so far as the record shows, for his own benefit. Neither was it alleged that the forbearance, if any, was for any definite length of time.

In Mitchell v. Harper, *et al.,* 80 Fla. 338, 86 Sou. 246, this court held:

"A valid agreement of extension has the effect of suspending the right of the owner of the indebtedness to enforce its payment during the period of such extension. But in order to be effectual such agreement must be supported by a sufficient consideration. A mere agreement for delay for no definite time and without consideration is not enforcible. 7 Cyc. 731; 27 Cyc. 1525; Friendenberg v. Robinson, 14 Fla. 130; Davis, *et al.,* v. Stout, 126 Ind. 12, 25 N. E. Rep. 862; Marshall Field Co. v. Oren Ruffcorn, 117 Ia. 157, 90 N. W. Rep. 618; Howe v. Klein, 89 Me. 376, 36 Atl. Rep. 620; Olmstead v. Latimer, *et al.,* 158 N. Y. 313, 53 N. E. Rep. 5."

Appellant also relies on Restatement of Contracts by American Law Institute, Sec. 90, where it is said:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial

character on the part of the promisee, and which does induce such action or forbearance, is binding."

The infirmity of the promise alleged is that it was not definite but on the contrary, was entirely indefinite as to terms and time.

Returning now to the Second question, we think the Chancellor misconstrued the terms of the contract in regard to conditions under which releases should be had. It appears that the Chancellor construed that clause of the contract to be effectual only to release of lots which were vacant at the time the release should be sought. The contract shows on its face that some of the lots involved were improved by having houses constructed on them and our construction of the contract is that "vacant lots" had reference to those lots which were vacant at the time the contract was entered into. The record does not show, however, that there has been any compliance with the terms of the contract by either of the defendants which would entitle such defendants to a release under the terms of the contract.

Certainly the terms of the sales contract did not contemplate that any lots would be released for the stated sum of $50.00 while the payments due under the terms of the contract were in default, but in contemplation of the contract was that if payments were made according to the terms of the contract and did not become in default, then the vendee under the sales contract (and this should be extended to his assignees) could procure releases by the payment of the sum of $50.00 each for lots which were vacant at the time the contract was executed and that these payments would be credited on future payments due under the terms of the contract.

On the whole record we find no reversible error disclosed and, therefore, the decree should be, and is, affirmed.

So ordered.

Affirmed.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, P. J., concurs in the opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.