**CAMINA SERVICES, INC. a Florida Corporation, Jorge L. Camina and Maria Luisa Camina, his wife**

v.

**SHELL OIL COMPANY, a Delaware Corporation.**

**No. 90–1400–Civ.**

United States District Court, S.D. Florida.

May 11, 1992.

Ovidio Jesus Hidalgo–Gato, Miami, FL, for plaintiff.

Sherryll Martens Dunaj, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

MARCUS, District Judge.

THIS CAUSE has come before the Court on Defendant Shell Oil Company's Consolidated Motion to Dismiss and Motion for Final Summary Judgment. In this action Plaintiffs Camina Services, Inc. ("Camina Service"), a Florida corporation, Jorge L. Camina, and Maria Luisa Camina seek damages and injunctive relief for Defendant Shell Oil Company's ("Shell") termination of the parties' service station franchise and franchise relationship. After conducting an extensive factual hearing, on January 8, 1991 this Court entered an Order denying Plaintiff's Motion for Issuance of Preliminary Injunction. (DE 36).

In June 1987 Camina Service purchased from the previous owner, with Shell's consent, a service station located at 1201 Northwest 7th Street, Miami, Florida. Shell and Camina Service entered into a Dealer Agreement, a Motor Fuel Station Lease and an Auto Care Agreement (collectively, "the Agreements") extending from June 1, 1987 until May 31, 1990. On January 29, 1990 Jorge Camina pled guilty in federal court to the criminal offense of possession with the intent to distribute cocaine, in violation of 21

U.S.C. § 841(a)(1), and on April 13, 1990 Shell informed Camina Services that because of Jorge Camina's conviction, the franchise would be terminated as of July 31, 1990. Amended Complaint at ¶¶ 17–18. Sometime thereafter, Camina Services notified Shell that it wished to continue the franchise, that Jorge Camina would disassociate himself from the franchise, and that Plaintiffs desired that Jorge's wife, Plaintiff Luisa Camina, continue to act as the dealer. Complaint at ¶ 19. Shell refused.

The gravamen of the Amended Complaint is that Shell allegedly promised that Jorge Camina's conviction would not result in termination, and that by terminating the franchise Shell is liable for various losses sustained by Plaintiffs. Plaintiffs' Amended Complaint for Declaratory Relief, Injunctive Relief and Damages ("Amended Complaint) contains six counts. Count I (mislabelled Count II) requests declaratory relief; Count II seeks injunctive relief; Count III requests damages based upon promissory estoppel theory; Count IV alleges breach of contract; Count V alleges misrepresentation and fraud; Count VI alleges intentional interference with prospective business relations. Defendant has moved to dismiss, or alternatively for summary judgment, as to all six counts.

Plaintiffs' Amended Complaint and Defendant's motion raise a variety of federal statutory and state common law issues, including the question of preemption. Specifically, Plaintiffs seek to impose liability upon Defendant under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.* In addition, the scope of state law preempted by the PMPA is at issue.

Defendant has moved to dismiss or for summary judgment[1] as to all counts. The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit has explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.*] *Marsh,* 651 F.2d [983] at 991. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics* [*Techniques, Inc. v. Wackenhut Protective Systems, Inc.*], 669 F.2d [1026] at 1031; *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir. 1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh,*

---

1. As it is generally necessary to look beyond the amended complaint and the attached exhibits, we resolve these issues on summary judgment.

651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

▮ The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254, 106 S.Ct. at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

In another recent case, the Supreme Court has declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will *bear* the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added).

We observe that in an action based upon the PMPA, the burdens of proof and production are allocated by the statute as follows:

> In any action under subsection (a) of this section, the franchisee shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship. The franchisor shall bear the burden of going forward with evidence to establish that such termination or nonrenewal was permitted under section 2802(b) or 2803 of this title....

15 U.S.C. § 2805(c); *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1569 (11th Cir.1987). It is undisputed that the Plaintiffs have established the termination or nonrenewal of the franchise. The burden thus falls to Shell to demonstrate that termination was permitted under the PMPA. *Id.* ("[T]o prevail on its own motion for summary judgment, Chevron had to demonstrate that the termination was lawful under the PMPA.")

### Count I

▮ In this Count, Plaintiffs seek a declaration of its rights pursuant to the Agreements, the PMPA and other applicable law. For the most part, Plaintiffs' claims pursuant

to state law are resolved in the discussions of Counts III–VI. In summary we conclude as follows: Shell was within its rights to terminate or refuse to renew the franchise under both the PMPA and the Agreements. Furthermore, the PMPA preempts Plaintiffs' causes of action based upon promissory estoppel, misrepresentation and fraud, intentional interference with prospective business relations; moreover, even if these causes of action were not preempted, summary judgment as to these counts is appropriate.

Insofar as Plaintiffs contend that Shell violated the provisions of the PMPA, Plaintiffs' claim is without merit. In general, the PMPA provides, among other things, requirements for the termination of service station franchises. In discussing the policies underlying the PMPA, the Eleventh Circuit has written:

> The legislative history of the PMPA reveals that the Act was designed to protect franchisees from arbitrary or discriminatory termination of nonrenewal. S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in,* 1978 U.S.Code Cong. & Admin.News 873, 874 (*Senate Report*). Congress sought to equalize the obvious disparity in bargaining power between major oil companies and service station operators. *Senate Report* at 875–77. It recognized, however, that franchisors have a legitimate need to terminate or refuse to renew a franchise for violations of the franchise agreement which undermine the entire relationship. *Senate Report* at 876. To attain these often conflicting goals, Congress specifically set forth the permissible grounds for termination or nonrenewal of franchise relationships, and bestowed on federal courts jurisdiction to remedy violations of the Act.

*Doebereiner v. Sohio Oil Co.,* 880 F.2d 329, 331–32 (11th Cir.1989) (footnote omitted). Section 2802 of the PMPA provides as follows:

> (a) Except as provided in subsection (b) of this section ... no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may—
>
> . . . . .
>
> (2) fail to renew any franchise relationship (without regard to the date on which the relevant franchise was entered into or renewed).

15 U.S.C. § 2802(a)(2). A franchisor's failure to comply with the provisions of section 2802 gives rise to a cause of action in the franchisee. *See* 15 U.S.C. § 2805(a).[2] The statute provides that proper grounds for nonrenewal exist upon the "conviction of the franchisee of any felony involving moral turpitude." 15 U.S.C. § 2802(c)(12); 15 U.S.C. § 2802(b)(2)(C).

It is undisputed that Camina Services' President, Jorge Camina, was in the United States District Court for the Southern District of Florida convicted pursuant to 21 U.S.C. § 841(a)(1) of possession of cocaine with the intent to distribute, a felony involving moral turpitude. Plaintiffs contend that despite the conviction of Jorge Camina, Shell's termination of the franchise was improper. Plaintiffs attempt to distinguish Camina Services, the party to the Agreements, from Jorge Camina, the President and owner of fifty per cent of Camina Services, and thus insulate Camina Services from the repercussions of Jorge Camina's conviction.

As the United States Court of Appeals for the District of Columbia observed: "Although the PMPA attempts to prevent arbitrary and unreasonable terminations, it also seeks to preserve intact the franchisor's legitimate freedom to choose with whom it will deal. The one goal is as important as the other. The object is balance." *Lewis v. Exxon Corp.,* 716 F.2d 1398, 1399 (D.C.Cir. 1983). In denying Plaintiffs' motion for preliminary injunction, this Court observed: "Corporate ownership may not be used to contravene the stated purposes of the PMPA." Order Denying Motion for Preliminary Injunction at 10 (Jan. 8, 1991). The plain language of the statute compels this conclusion. As discussed above, section 2802(c)(12), in conjunction with section 2802(b)(2)(C), provides that "conviction of any franchisee of any felony involving moral

---

**2.** The parties are in agreement that the Dealer Agreement and Motor Fuel Station Lease constituted the franchise agreement between the parties. Camina Service and Shell were, respectively, franchisee and franchisor under the terms of the PMPA, and the adequacy of notice is not at issue. *See* 15 U.S.C. § 2801(1)–(4), 2802(b)(2)(C).

turpitude" is sufficient grounds for termination. "Franchisee" is defined as a "retailer ·or distributor" who under a franchise is permitted to use a trademark in connection with the sale, consignment or distribution of motor fuel. 15 U.S.C. § 2801(4). In turn, "distributor," is defined to include "any affiliate" of one who purchases motor fuel for sale. 15 U.S.C. § 2801(6). "Affiliate" is defined as "any person who (other than by means of a franchise) controls, is controlled by, or is under common control with, any other person." 15 U.S.C. § 2801(15). *See Humboldt Oil Co. v. Exxon Co.*, 532 F.Supp. 896, 898–99 (D.Nev.), *vacated on other grounds*, 695 F.2d 386, ·388 (9th Cir.1982). Though the term "control" is undefined, as Jorge Camina was President, director, and fifty-per-cent owner of Camina Services, and executed all the relevant documents and attended the relevant meetings on behalf of Camina Services, we are hard pressed to see how he could be said not to be in control of Camina Services. Clearly, Jorge Camina was an affiliate of Camina Services, and thus a distributor and a franchisee whose crime of moral turpitude permitted termination or nonrenewal of his franchise. Accordingly, Plaintiffs' attempts to isolate the corporation from Jorge Camina's acts are unavailing, and Shell did not violate the PMPA by terminating the franchise.

Plaintiff is not entitled to the declaration of rights it seeks, and, accordingly Defendant's motion for summary judgment as to Count I must be and is GRANTED.

### · Count II–Injunctive Relief

In Count II of the Complaint, Plaintiffs seek preliminary and permanent injunctive relief, specifically, entry of an injunction preventing Shell from terminating the franchise. As discussed above, this Court has already denied Plaintiff's motion for preliminary injunction. *See* Order Denying Motion for Preliminary Injunction (Jan. 8, 1991) (DE 36). Insofar as permanent injunctive relief is requested, subsequent to the denial of the motion for preliminary injunction, the parties agreed to terminate the relationships created by the Motor Fuel Station Lease and the Dealer Agreement. *See* Affidavit of J.M. Rodriguez & Exhibit. Moreover, Camina Service has vacated the Northwest 7th Street location. *See* Affidavit of ·J.M. Rodriguez ¶ 3. Significantly, Plaintiffs in their Response do not respond to Defendant's contention that summary judgment as to· Count II is appropriate. Finally, we conclude that given the resolution of the ·other counts, no basis exists upon which injunctive relief could be warranted. Under these · circumstances, summary judgment as to count II is and must be GRANTED.

### Count III–Promissory Estoppel

In its Amended Complaint, Plaintiffs allege that "Shell promised Plaintiffs" that Mrs. Camina could act on· behalf of Camina Service, despite Jorge Camina's conviction, and that Plaintiffs reasonably relied on this promise to their detriment. Amended Complaint at ¶¶ 44–45. Plaintiffs contend that because of this promise, because Shell knew of Jorge Camina's criminal liability in the fall of 1987,[3] "because Shell allowed Mrs. Camina to attend dealer training school at Shell's expense, and because Shell allowed Mrs. Camina to operate the station since February 1988, Shell is estopped from refusing to.permit Camina Service, by and through Mrs. Camina, to continue the Franchise relationship." Amended Complaint at ¶ 48. Defendant argues that summary judgment as to the claim for promissory estoppel is proper on two grounds: (1) that as a matter of law the claim is wholly preempted by the PMPA, and (2) that under state law no material facts are in dispute that preclude summary judgment.

The PMPA explicitly provides for preemption of certain state laws:

> To the extent that any provision of this subchapter applies to the termination . . . of any franchise, or to the nonrenewal . . . of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision

---

**3.** Whether Shell knew in the Fall of 1987 of the potential for Jorge Camina's indictment is hotly disputed. In finding facts for purposes of resolving the motion for preliminary injunction, we found that Shell did not in fact know. For purposes of this motion, however, we take all facts and draw all inferences in a light most favorable to Plaintiff.

of any law or regulation … with respect to termination … of any such franchise or to the nonrenewal … of any such franchise relationship.

15 U.S.C. § 2806(a). On its face the preemption clause preempts a state law claim for promissory estoppel "with respect to termination." *Id.* "The PMPA provisions concerning termination and nonrenewal are central to the counterpoise between fairness to franchisees and flexibility for franchisors that Congress established." *Darling v. Mobil Oil Corp.,* 864 F.2d 981, 988 (2d Cir.1989). State law causes of action unrelated to termination or nonrenewal of a franchise may not be preempted, *see Esso Standard Oil Co. v. Department of Consumer Affairs,* 793 F.2d 431, 434 (1st Cir.1986), but those directly bearing upon termination or nonrenewal have been consistently found preempted. *See Continental Enterprises, Inc. v. American Oil Co.,* 808 F.2d 24, 26–28 (8th Cir.1986) (citing various cases). The Sixth Circuit has observed that the PMPA "does not preempt every state law that relates remotely to the termination or nonrenewal of petroleum franchises; but it does preempt any state law with respect to 'grounds for, procedures for and notification requirements' with respect to terminations and nonrenewals." *Consumers Petroleum v. Texaco,* 804 F.2d 907, 915 (6th Cir.1986) (quoting *Bellmore v. Mobil Oil Corp.,* 783 F.2d 300, 304 (2d Cir.1986). And the Third Circuit wrote in *O'Shea v. Amoco Oil Co.*:

> [T]he PMPA preempts only those state laws that regulate the "grounds for, procedures for, and notification requirements with respect to termination," to the extent that such laws are not the same as the PMPA. *Bellmore [v. Mobil Oil Corp.],* 783 F.2d 300, 304 (2d Cir.1986)..... [W]e believe that PMPA only preempts state laws that limit the permissible substantive reasons that a petroleum franchisor can terminate a franchisee.

886 F.2d 584, 593 (3d Cir.1989). *See Pride v. Exxon Corp.,* 911 F.2d 251, 258 (9th Cir.1990) (adopting the Third Circuit's analysis in *O'Shea* ). Other courts have taken an even broader view of the scope of PMPA preemption. *See Jiminez v. BP Oil, Inc.,* 853 F.2d 268, 273 (4th Cir.1988) ("The breadth of [the PMPA preemption provision] evinces an in-

tent by Congress to 'occupy the field relating to termination and non-renewal of petroleum franchises.'" (quoting *Tousley v. North American Van Lines,* 752 F.2d 96, 101 (4th Cir.1985))). The preemption clause has been held to bar both claims under common law and state statute. *See Continental Enterprises,* 808 F.2d at 26–28 (misrepresentation, tortious interference and breach of contract); *Exxon Corp. v. Gonzalez,* No. 85–1182–CIV (Slip Op. S.D.Fla. Sept. 24, 1985) (King, J.) ("Section 2806(a) of the PMPA … preempts any state law, statutory or common, in the area of termination or non-renewal that is different than the PMPA.").

■ Plaintiffs, however, ask this court to find that under state law of promissory estoppel, Shell is estopped from exercising its statutory right to terminate the franchise. Such a claim is certainly "in relation to the termination," and represents an attempt to limit the ability of the franchisor to avail itself of a ground for termination provided by Congress. Accordingly, Defendant's motion for summary judgment as to Count III must be and is GRANTED.

■ Furthermore, even if this claim were not preempted, we would find that Plaintiff's evidence of a promise was insufficient to survive summary judgment. As we wrote in the Order Denying the Motion for Preliminary Injunction:

> Even, however, if this Court were to credit [Jorge] Camina's testimony—and we do not—the totality of the "promise" asserted by Camina was that, in response to hearing that Camina planned to fight any possible investigation and that Camina planned to fight any possible investigation and that Camina wanted his wife to be a Shell dealer so she could run the station if anything happened, [Shell's representative] said that this was a "good idea" and that he would look into the "possibility" of Mrs. Camina attending the Retail Learning Center. Jorge Camina did not contend that he discussed the matter further or at any other time or in any greater detail with [the Shell representative], nor did Camina make any attempt to solidify the terms of any such agreement with anyone else at Shell Oil.

Order at 7 (Jan. 8, 1991). The Florida Supreme Court has written:

> The basic elements of promissory estoppel are set forth in Restatement (Second) of Contracts § 90 (1979), which states:
>
>> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.....

*W.R. Grace & Co. v. Geodata Services,* 547 So.2d 919, 924 (Fla.1989). "For promissory estoppel to be applied, the evidence must be clear and convincing." *Id.* at 924. In addition, application of promissory estoppel may be rejected if the terms of the promise are indefinite. *Id.* (citing *Hygema v. Markley,* 137 Fla. 1, 187 So. 373 (1939)). Simply put, Plaintiff's allegations that Shell could have told Jorge Camina that the franchise would in fact be terminated if he were convicted, *see* Plaintiff's Response at 8–9, and Shell's willingness to put Mrs. Camina through its management school do not in any way constitute promises, and, of course, are not definite promises. No reasonable trier of fact could find sufficient evidence, viewing the facts in the light most favorable to Plaintiff, that a promise not to terminate the franchise was made, or that any reliance on the Shell representative's statements was reasonable.

Accordingly, Defendant's motion for summary judgment as to Count III must be and is GRANTED.

### Count IV–Breach of Contract

■ Plaintiffs allege that by terminating the franchise and refusing to allow Jorge Camina to assign his rights to his wife, Shell breached the Agreements. Amended Complaint at ¶ 53. We observe initially that Plaintiffs have neglected to identify which, if any, portions of which agreements were allegedly breached. As Plaintiffs indicate that the breach occurred in terminating the franchise based upon "the felony conviction of one (1) of Camina Service, Inc.'s two (2) shareholders, directors and officers," we assume that Plaintiff objects to the attribution of his transgressions to Camina Service. Notably, paragraph 25.4 of the Dealer Agreement and paragraph 16.4 of the Lease Agreement explicitly attribute the actions of those "who have or exercise management responsibility ... including, without limitation, officers...." *See* Amended Complaint, Appendix. We add again that pursuant to § 2802(b)(2)(C) of the PMPA a franchisor may fail to renew a franchise relationship where the event occurs during the franchise period, provided that notice is given. One enumerated event is a conviction for a felony involving moral turpitude. 15 U.S.C. § 2802(c)(12).

Plaintiff also alleges, again without specifying a contractual provision, that by refusing to permit Jorge Camina's assignment of his interest to his wife, Shell somehow is in breach of contract. "Congress did not intend either to authorize or to prohibit franchise assignments, but, as a general rule, left the matter to state law. However, the legislative history indicates that Congress anticipated potential conflict between federal termination and state assignment provisions and suggested a method of reconciliation." *Humboldt Oil Co. v. Exxon Co.,* 823 F.2d 373 (9th Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1575, 99 L.Ed.2d 890 (1988). The legislative history makes clear that Plaintiff's claim is preempted:

> For example, it is not intended that a franchiseee [sic] may avoid the consequences of his own conduct which gave rise to a notice of termination or nonrenewal by merely assigning his franchise after having been notified by the franchisor of the franchisor's intent to terminate of fail to renew. Such a result would not be countenanced under general principles of equity.

S.Rep. No. 731, 95th Cong., 2d Sess. 43, *reprinted in,* U.S.Code Cong. & Admin.News 873, 901. The Defendant is plainly entitled to summary judgment as to this Count.

### Count V–Misrepresentation and Fraud

■ Plaintiffs allege that Shell committed fraud by misrepresenting its intentions to terminate the franchise. Various courts have held, however, that fraud and misrepresentation claims related to termination likewise are preempted by the PMPA. *See Continental Enterprises,* 808 F.2d at 26–28 (misrepresentation claim preempted); *Esquivel v.*

*Exxon Co. U.S.A.,* 700 F.Supp. 890, 896–97 (W.D.Tex.1988) ("[B]oth of Plaintiff's claims [fraud and breach of fiduciary duty] concern defendant's non-renewal of the trial franchise period.... Courts have consistently held that the PMPA preempts state common law in the wrongful termination area."). Accordingly, Plaintiff's motion for summary judgment as to Count V must be and is GRANTED.

### Count VI–Intentional Interference with Prospective Relations

 This Count is based upon Shell's unwillingness to allow assignment of the franchise. Amended Complaint at ¶¶ 62–63. As stated above in the discussion of Count IV, to the extent Plaintiffs seek to bring suit based upon a denial of a request for permission to assign that was made after the notice of termination issued, the claim is preempted. *See Continental Enterprises,* 808 F.2d at 26–29 (claim for tortious interference preempted).

In *Wackenhut Corp. v. Maimone* the Fourth District Court of Appeals in Florida recited the elements of the tort of intentional interference with a contractual relationship:

1. the existence of an advantageous business relationship under which the plaintiff has legal rights;
2. an intentional and unjustified interference with that relationship; and
3. damage to the plaintiff as a result of the defendant's actions.

389 So.2d 656, 657 (Fla. 4th DCA 1980), *petition denied,* 411 So.2d 383 (Fla.1981). In the instant case, Plaintiffs have failed to allege or adduce evidence of any advantageous business relationship, much less one pursuant to which Plaintiffs had any legal rights. As a result, even if this cause of action were not preempted by the PMPA, summary judgment would still be appropriate. Accordingly, Defendant's motion for summary judgment as to Count VI is GRANTED.

In sum, Defendant's Motion for Final Summary Judgment is GRANTED in all respects. Defendant's Motion to Dismiss for Failure to Comply with Court Order and Local Rules is DENIED. Defendant's Motion to Strike Punitive Damage Claims is DENIED as moot. Counsel for Defendant is directed to submit a final order of summary judgment within fifteen (15) days of the date of this Order.

DONE AND ORDERED.