831 F.2d 293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gerald D. BUCKLEW, Plaintiff-Appellant,
v.
STANDARD OIL COMPANY, Defendant-Appellee.
 No. 86-3924.
 United States Court of Appeals, Sixth Circuit.
 Oct. 14, 1987.
 
 Before MERRITT and RYAN, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Gerald Bucklew brought this action against defendant-appellee Standard Oil Company under the Petroleum Marketing Practice Act (PMPA), 15 U.S.C. Sec. 2801 et seq. Plaintiff, a distributor or "consumer-marketer" for Standard Oil, alleged that Standard acted in bad faith by not renewing its franchise agreement with him. 15 U.S.C. Sec. 2802(b)(3)(A)(i) and (ii). Defendant moved for summary judgment pursuant to Fed.R.Civ.P. 56. The district court, finding no genuine issue as to a lack of subjective good faith on Standard's part, granted defendant's motion. Plaintiff now appeals the district court order. We affirm.
 
 
 2
 In June 1981, plaintiff and defendant entered into a one-year agreement under which defendant agreed to deliver to plaintiff its petroleum products and plaintiff agreed to act as a consumer marketer for these products. Pursuant to the agreement, plaintiff was responsible for shortages (the difference between the amount of product metered by defendant and the amount delivered by plaintiff to customers) in excess of 0.75% of the product delivered. Shortages were to be determined both at month's end and by periodic audits. In May 1982, the parties agreed to extend the agreement on a month-to-month basis. The agreement remained in effect until defendant terminated it in July 1984.
 
 
 3
 In January 1984, defendant presented a second series of agreements to plaintiff for his signature. These agreements were essentially the same as the June 1981 agreement, except for the addition of a new provision governing shortages. Under the new proposal, the plaintiff would be required to assume the responsibility for shortages between audits which exceeded $5,000 in value. Failure to pay defendant the total shortage amount within 15 days after the date of notice could result in termination of the franchise. Plaintiff repeatedly refused to sign the new agreement and defendant thereafter did not renew the previous month-to-month agreement.
 
 
 4
 Plaintiff brought suit in the district court arguing that the non-renewal of his franchise violated the PMPA. He alleged that the additional term was a unilateral attempt by the defendant to recoup shortages caused by "vapor losses." Plaintiff claimed such losses were not covered by the previous agreement and that the defendant's attempt to hold plaintiff responsible for such losses under the new contract was an act of bad faith within the meaning of the PMPA. Under the PMPA, non-renewal of a franchise relationship must be in good faith and not for the purpose of preventing renewal. 15 U.S.C. Sec. 2802(b)(3)(A)(i) and (ii).
 
 
 5
 Defendant moved for summary judgment under Fed.R.Civ.P. 56, arguing that there was no genuine issue of material fact as to any lack of subjective good faith on its part. The district court granted the motion and plaintiff appeals.
 
 
 6
 The issue before us is whether the defendant's non-renewal of the franchise relationship raised an issue of material fact concerning its good faith
 
 
 7
 On appeal, this court reviews orders granting or denying a summary judgment under the same standard as that applied by the district court in the first instance. C. Wright & A. Miller, Federal Practice and Procedure, Sec. 2716 (1983). Summary judgment is proper when, viewing all reasonable inferences in a light most favorable to the opposing party, it appears that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Crippen v. Kheder, 741 F.2d 102, 104 (6th Cir.1984).
 
 
 8
 Under the PMPA, the franchisee has the burden of proving the wrongful non-renewal of the franchise relationship. The franchisor bears the burden of producing evidence to establish a permissible affirmative defense. 15 U.S.C. Sec. 2805(c). Section 2802(b) establishes an affirmative defense:
 
 
 9
 "(3) for purposes of this subsection, the following are grounds for non-renewal of a franchise relationship:
 
 
 10
 (A) the failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if--
 
 
 11
 (i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and
 
 
 12
 (ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship."
 
 
 13
 The element of good faith under Sec. 2802(b)(3)(A)(i) is scrutinized under a subjective test. Baldauf v. Amoco Oil Company, 553 F.Supp. 408 (W.D.Mich., 1981), aff'd 700 F.2d 326 (6th Cir.1983). "As long as a franchisor does not have a discriminatory motive or does not issue the altered terms as a pretext to avoid renewal, good faith on the part of the franchisee has been met." Baldauf, supra at 412. "This good faith test is meant to preclude sham determinations from being used as an artifice for termination or non-renewal." Baldauf, supra, at 412 (citing Munno v. Amoco Oil Company, 488 F.Supp. 1114, 1119 (D.Conn.1980)). Plaintiff has alleged that defendant acted in bad faith by changing the interpretation of the contract with respect to plaintiff's responsibility for shortages. However, the contracts reveal that plaintiff was also responsible under the 1981 agreements. The proposed 1984 agreements did not alter this responsibility, rather they altered the timing of payments for shortages. Both sets of agreements represent an apportionment of the risk of loss between plaintiff and defendant.
 
 
 14
 No evidence exists that the change operated to discriminate against plaintiff. Plaintiff received the same 1984 agreements offered to every other consumer-marketer. Every other franchisee with the exception of plaintiff executed the agreement.
 
 
 15
 Further, plaintiff has offered no evidence that defendant's non-renewal was a "sham" or "artifice". Michael S. Gabel, a Standard employee responsible for the proposed changes in the 1981 agreement stated in his affidavit in support of the motion for summary judgment that the reason for the change was Standard's concern for the general credit worthiness of its dealer marketers. Plaintiff in his own deposition concurred with defendant's concern: "I would say it would be in their best interests if they charge us for shortages, yes. That's always been a big problem with Standard Oil."
 
 
 16
 Nor were the changes offered for the purpose of preventing the renewal of the franchise relationship. 28 U.S.C. Sec. 2802(b)(3)(A)(ii). Plaintiff was given numerous opportunities to sign the nondiscriminatory 1984 agreement, both before and after his receipt of the notice of non-renewal, yet he alone refused.
 
 
 17
 We find no issue of material fact remains concerning the defendant's good faith. Standard's nondiscriminatory business decision is neither a "sham" nor an "artifice," and is not in bad faith simply because it benefits Standard.
 
 
 18
 Accordingly, the judgment of the district court is AFFIRMED.