**ROSHAN ASSOCIATES, INC.**

v.

**MOTIVA ENTERPRISES, L.L.C., et al**

No. CIV.A. 01–2649.

United States District Court,
E.D. Louisiana.

Aug. 28, 2002.

Edmond G. Miranne, Jr., Edmond G. Miranne, Jr., APLC, New Orleans, LA, for Roshan Assoc., Inc.

Roshan Assoc. Inc., Kenner, LA, pro se.

Joe B. Norman, George Denegre, Jr., Jana Louise Grauberger, Liskow & Lewis,

New Orleans, LA, for Motiva Enterprises, L.L.C., Star Enterprises.

## ORDER AND REASONS

ENGELHARDT, District Judge.

Before the Court is a Motion for Summary Judgment, filed by defendants, Motiva Enterprises LLC ("Motiva") and Star Enterprise ("Star"). For the reasons that follow, the motion is GRANTED.

## I. BACKGROUND

Plaintiff, Roshan Associates, Inc., entered into petroleum marketing franchise agreements (a Lease and a Sales Agreement) with Star, which provided for a three-year franchise and lease term (from September 1, 1997 through August 31, 2000) at a Texaco branded service station at 6500 Downman Road in New Orleans. Star assigned its interest in the agreements to Motiva in July 1998. After analyzing revenues at Downman Road and other New Orleans properties, Motiva decided in the Spring of 2000 to sell the Downman Road property. By letter dated May 19, 2000, Motiva notified plaintiff that it did not intend to renew the franchise agreements when they expired on August 31, 2000. On July 10, 2000, Motiva gave plaintiff a PMPA Bona Fide Offer to Sell Premises, offering to sell for $496,000 the land, buildings, fixtures, and all equipment except for the underground storage tanks (USTs). The USTs were excluded pursuant to a company-wide policy requiring that certain such tanks (*e.g.*, all Owens–Corning, single-wall, fiberglass USTs installed before 1984) be removed prior to any sale. Motiva implemented this policy to avoid the potential environmental liability that could result from leaks on the property after the company no longer had control over the use, maintenance, and monitoring of these older tanks. Plaintiff did not accept the offer by the August 28,

2000 deadline and vacated the premises on August 31, 2000, the expiration date of the franchise agreements. One year later, plaintiff brought this suit under the Petroleum Marketing Practices Act ("PMPA") and the Louisiana Unfair Trade Practices Act ("LUTPA"), seeking damages, injunctive relief, and reinstatement of its franchise.

## II. LAW AND ANALYSIS

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Kee v. City of Rowlett, Texas*, 247 F.3d 206, 210 (5th Cir.), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c))), *cert. denied*, 534 U.S. 892, 122 S.Ct. 210, 151 L.Ed.2d 149 (2001). "The moving party bears the burden of showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 210. If the moving party meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* "A dispute over a material fact is genuine if the evidence is such that a jury reasonably could return a verdict for the nonmoving party." *Id.* (internal quotations omitted).

### A. The Petroleum Marketing Practices Act ("PMPA"):

The PMPA governs the means by which a franchisor engaged in the sale of motor fuel may terminate or nonrenew a franchise. 15 U.S.C. § 2802(a). Under the PMPA, a determination to sell the premises is a legitimate ground for nonrenewal of a franchise relationship provided

that: (1) the decision to sell the property is made in good faith and in the normal course of business; and (2) the franchisor either makes a bona fide offer to sell the premises to the franchisee or, if applicable, offers the franchisee a right of first refusal. 15 U.S.C. § 2802(b)(3)(D). Motiva argues that its nonrenewal satisfied these requirements, that no genuine issue exists as to any material fact, and that it is entitled to judgment as a matter of law dismissing plaintiff's PMPA claims. The Court agrees.[1]

■ The first test, the good faith test, "is meant to preclude sham determinations from being used as an artifice for termination or non-renewal." *Harris v. Equilon Enterprises, LLC,* 107 F.Supp.2d 921, 926 n. 10 (S.D.Ohio 2000) (quoting *Bucklew v. Standard Oil Co.,* 1987 WL 38149 (6th Cir.1987)) (internal quotations omitted). "The test for good faith is one of subjective intent.... So long as the franchisor does not have a discriminatory motive ..., the franchisor has met the burden required by the PMPA for determining good faith." *Id.* (quoting *Bucklew,* 1987 WL 38149) (internal quotations omitted). Here, plaintiff has pointed to no facts that would support an inference that Motiva's decision to sell was a sham or artifice designed to accomplish nonrenewal. Indeed, after plaintiff vacated the premises, Motiva put the property on the market, and it is still on the market. Gillespie Aff. ¶ 17. Thus, the good faith test is satisfied.

"The second test is whether the determination was made 'in the normal course of business.' Under this test, the determination must have been the result of the franchisor's normal decisionmaking process.... [I]t it is not necessary for the courts to determine whether a particular marketing strategy, such as a market withdrawal, ... is a wise business decision." *Harris,* 107 F.Supp.2d at 926 n. 11 (quoting *Massey v. Exxon Corp.,* 942 F.2d 340, 345 (6th Cir.1991) (quoting S.Rep. No. 731, 95th Cong., 2d Sess. 37, *reprinted in* 1978 U.S.Code Cong. & Admin. News 873, 896)). Here, the evidence is uncontroverted that Motiva's decision to sell the premises was made in connection with an analysis of projected revenue streams, which was part of a plan to identify which New Orleans properties would be good investments for Motiva and which should be relinquished. Gillespie Aff. ¶¶ 7–8. Under the case law, a financially-driven decision such as Motiva's easily satisfies the "normal course of business" require-

---

1. Plaintiff submitted no opposition to defendants' motion before its original deadline expired on July 30, 2002. The afternoon before the deadline expired, plaintiff's counsel moved to withdraw. On August 1, 2002, the Court extended the deadline an additional two weeks, to allow plaintiff time to retain substitute counsel. After granting counsel's motion to withdraw, the Court gave plaintiff an additional week, until August 22, 2002, to find counsel and file its opposition. Plaintiff has not obtained counsel. However, the president of Roshan Associates, Mohammed S. Cheema, filed an opposition memorandum with the Court on August 22, 2002. Pursuant to the Fifth Circuit's interpretation of 28 U.S.C. § 1654, a layperson may not represent a corporation, regardless of his relationship to the corporation. *See Donovan v. Road Rangers Country Junction, Inc.,* 736 F.2d 1004, 1005 (5th Cir.1984) (" 'a corporation as a fictional legal person can only be represented by licensed counsel' ") (quoting *K.M.A., Inc. v. General Motors Acceptance Corp.,* 652 F.2d 398, 399 (5th Cir.1981)), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1198, 84 L.Ed.2d 342 (1985); *Southwest Exp. Co., Inc. v. I.C. C.,* 670 F.2d 53, 56 (5th Cir.1982) ("the only proper representative of a corporation or a partnership is a licensed attorney, not an unlicensed layman regardless of how close his association with the partnership or corporation"). Nevertheless, this Court has considered the submission of Mr. Cheema and treated it as an *amicus curiae* submission.

ment. *See, e.g., Harris,* 107 F.Supp.2d at 926.

█ The final inquiry is whether the franchisor made a "bona fide" offer to sell the property to the franchisee. Motiva arrived at its asking price with the help of Hopkins Appraisal Services, Inc., an independent, third-party appraiser who specializes in appraising petroleum marketing properties and helping clients comply with PMPA. Porter Aff. ¶¶ 2–4. Using the same methodology employed at 4,200 other Motiva properties, Hopkins valued the land according to its continued use as a service station at a fair market value (based on other land sales in the area) of $200,000; it valued the site improvements (*e.g.,* building, canopy, car wash, curbing) at $188,000 and the site equipment (*e.g.,* hoses, pumps, tanks, signs, lights) at $138,240, for a total value of $526,000. *Id.* ¶¶ 7–11. From this total figure, Motiva subtracted $55,000 to reflect the exclusion of the USTs, and $25,000 was added to defray Motiva's removal costs, for a total purchase price of $496,000. Gillespie aff. ¶ 15.

The Court finds no genuine issue as to whether Motiva's offer was a "bona fide" one. Congress' use of the term "bona fide" rather than "fair market value" indicates a "degree of deference" and "a recognition that 'the word "value" almost always involves a conjecture, a guess, a prediction, a prophecy.'" *Slatky v. Amoco Oil Co.,* 830 F.2d 476, 485 (3rd Cir. 1987) (quoting *Amerada Hess Corp. v. Commissioner,* 517 F.2d 75, 83 (3d Cir. 1975)). Thus, while courts require a measure of objective reasonableness, they recognize that "[t]here may be a range of prices with reasonable claims to being fair market value." *Harris,* 107 F.Supp.2d at 931 (quoting *Slatky v. Amoco Oil Co.,* 830 F.2d 476, 485 (3rd Cir.1987)). Motiva's method for arriving at a purchase price (*i.e.,* valuing land based on other land sales and valuing equipment separately) has been approved by other courts evaluating whether an asking price constitutes a bona fide offer under the PMPA. *See, e.g., Harris,* 107 F.Supp.2d at 931. Moreover, it is the same method used by Motiva in appraising 4,200 other service station locations. *See* Porter Aff. ¶ 12. Plaintiff has submitted no competent evidence suggesting that the offer did not approach fair market value.[2]

Plaintiff alleges in its Complaint that Motiva's offer was not "bona fide" because it excluded the underground storage tanks. The Court disagrees that a genuine issue exists on this point. The PMPA does not require a franchisor to include in its offer to sell USTs that may pose a threat to the environment. *See, e.g., Harris,* 107 F.Supp.2d at 927; *LCA Corp. v. Shell Oil Co.,* 916 F.2d 434, 436 (8th Cir.1990); *Tobias v. Shell Oil Co.,* 782 F.2d 1172, 1174–75 (4th Cir.1986). Here, the evidence is uncontroverted that: (1) Motiva's exclusion of the USTs was done pursuant to a company-wide policy of excluding these older, single-wall tanks; (2) the policy is applied to all service station sales without discrimination; (3) the tanks on the Downman Road property fell squarely within the policy; and (4) the policy was based on concerns about the structural integrity of the

---

**2.** The appraisal report attached to the Complaint is not competent summary judgment evidence, and even if it was, it does not detract from Motiva's appraisal, for it does not purport to value all of the improvements and equipment on the property. The document submitted by Mr. Cheema, which purports to be a bill of sale for a piece of carwash equipment likewise is not authenticated. Even if it was competent evidence, this alleged one-dollar equipment sale does nothing to create a genuine issue regarding the amount of Motiva's offer or any other material fact.

tanks and designed to avoid future environmental liability for potential leaks after Motiva no longer owned the property. *See* Lowery Aff. ¶¶ 3–6 and Exh. A; Hovland Aff. ¶¶ 3–6. Accordingly, plaintiff has demonstrated no genuine issue as to the bona fide nature of Motiva's offer. Defendants have carried their burden under Rule 56, and they are entitled to judgment as a matter of law on plaintiff's PMPA claim.

### B. *Preemption of Plaintiff's LUPTA Claim:*

"The PMPA provides exclusive remedies for disputes relating to the non-renewal of franchises and preempts state law claims based on nonrenewal, no matter how such claims are characterized." *Shukla v. BP Exploration & Oil, Inc.*, 115 F.3d 849, 856 (11th Cir.1997); *Esquivel v. Exxon Co., U.S.A.*, 700 F.Supp. 890, 897 (W.D.Tex.1988). Here, plaintiff's claim under the Louisiana Unfair Trade Practices Act ("LUTPA") challenges the propriety of Motiva's nonrenewal and is based on the exact same allegations that support plaintiff's PMPA claim. *See* Complaint ¶¶ 34–36. Thus, the LUPTA claim is preempted.

### III. *CONCLUSION*

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment, filed by defendants, Motiva Enterprises LLC and Star Enterprise, is **GRANTED**.